S. T. BYERS AND LEORA BYERS, RESPONDENTS, v. NEWELL A. ZUSPAN AND FERRIS ZUSPAN, DEFENDANTS, NEWELL A. ZUSPAN, APPELLANT.—264 S. W. 2d 944.

St. Louis Court of Appeals. Opinion filed February 16, 1954.

*Hilbert* and *Veatch; Roberts* and *Roberts;* and *J. Richard Roberts.* for Appellant.

*J. Andy Zenge, Jr.,* and *J. Robert Minor* for Respondents.

RUDDY, J.—This is an action brought by plaintiffs, who are husband and wife, against defendants, who are brothers and are the sons of Rosa B. Zuspan, for damages alleged to have been sustained by reason of misrepresentations of authority by the defendants to act for their mother in the sale of a farm owned by her. At the close of plaintiffs' evidence the court sustained a motion for a directed verdict as to Ferris Zuspan and overruled it as to Newell A. Zuspan. From a judgment in favor of plaintiffs and against defendant, Newell A. Zuspan, for the sum of $3,000.00, said defendant appeals.

Plaintiffs' evidence revealed the following facts: Rosa B. Zuspan owned a farm in Lewis County, consisting of 160 acres. Plaintiffs lived on this farm for approximately eleven years prior to July 1950. Rosa B. Zuspan lived on the farm with the plaintiffs for about five years, leaving them in July of 1950.

About the time Rosa B. Zuspan was to terminate her stay with the plaintiffs, the following letter was received by them from Newell A. Zuspan, who, as we have said, was the son of Rosa B. Zuspan:

"July 7, 1950

"Mr. & Mrs. S. T. Byers
LaBelle, Mo.

"Dear Friends: I do not know if Arba wrote he would not be able to see you July 4. Some practice case came up he could not leave. So now one of us will come after mother later. Let you know.

"I thought you would offer a price because you know what it will produce. We will list it for 40.00 acre or $6400.00 but to save commission we will let you buy at $6,000. With a little repair I don't see how you could go wrong. You could have immediate possession on full amt. all crop 1950 yours. Please let me hear soon.

"As ever
"Newell."

Mrs. Leora Byers, one of the plaintiffs, when asked whether or not any reply was ever made to this letter and a subsequent letter received from Newell A. Zuspan, testified, "There probably was * * * I suppose there was" and finally when shown the letter of July 7, 1950, said "Yes, there was an answer." She said she told him they would try to take the place but the price was a little more than they had expected. She further testified that she told him they would take the place and would talk it over with Arba when he came after his mother (Rosa B. Zuspan). The record doesn't identify Arba, but the reference to Arba must have meant Ferris Zuspan.

S. T. Byers testified he communicated with Newell A. Zuspan after he received the letter dated July 7, 1950, and told him they would take the farm. His testimony doesn't reveal how he communicated this information.

Plaintiffs subsequently received from Newell A. Zuspan the following letter:

"Aug. 14, 1950

"Mr. & Mrs. Byers,
LaBelle, Mo.

"Dear Friends: At last we have mother's new clothing lined up and she will be in a very nice nursing home this afternoon. Sometime you might like to write. It is at 516 N. Sycamore street or add. me.

"Mother has agreed to sign a sale contract for the farm. Since farm prices are up I know you will do a fine thing to buy and perhaps we could get more, but are anxious for quick sale. Ferris has agreed to handle sale so please arrange with him. I am sending him the abstract.

"Enclosed please find check for Frank Crutchfield. Did not know his add.

"Yours truly,
"Newell."

About ten days after this letter was received by plaintiffs, Ferris Zuspan visited the farm and talked to plaintiff, S. T. Byers. This plaintiff asked Ferris Zuspan if he cared to leave any money in the place and he said that he didn't. When this plaintiff was asked if he was ready to settle, he told Ferris Zuspan, "I can give you a check tomorrow for your money if the abstract is brought up to date."

Ferris Zuspan returned the next day and informed this plaintiff that it would be some time before the abstract could be brought up to date.

The next visit to the farm by Ferris Zuspan took place about the second or third of October, 1950. On this occasion Ferris Zuspan told S. T. Byers that his mother wouldn't sell the farm for $6,000.00 and said she wanted $8,000.00 for the place. S. T. Byers told him that he had bought the place for $6,000.00 and that he didn't feel like paying any more. Ferris Zuspan then told S. T. Byers he would call his brother Newell and see if he could get him to change his mind about the deal. Thereafter, Ferris Zuspan told S. T. Byers he was not going to get the place.

After the letter of August 14, 1950 was received from Newell A. Zuspan by the plaintiffs, they repaired the cattle barn on the farm; paid for a membership in the Rural Electrification Association; seeded some grass and spread some lime. Plaintiffs admitted they paid no money toward the purchase of the farm and when S. T. Byers was asked if any contract for the purchase of the farm was signed, he answered "No sir." Plaintiffs knew the farm was owned by Rosa B. Zuspan, but insisted they relied on the authority of the defendants to represent their mother.

Harry Sykes, President of the Bank of La Belle, Missouri, testified he had agreed to make a loan to S. T. Byers for the purpose of buying the Zuspan farm. The farm was sold to Foster Mesmer in October 1950. Evidence was introduced by plaintiffs showing that Rosa B. Zuspan had never authorized her sons, or either of them, to represent her in a sale of her farm to S. T. Byers.

Defendants' evidence was to the effect that plaintiffs did not have the cash and tried to get Ferris Zuspan or his mother to take back a mortgage for part of the purchase price. This was refused and plaintiffs were told the deal was off. It seems that defendants would have taken $6,000.00 if plaintiffs could have paid all cash when Ferris Zuspan called on them the first time. Thereafter, the mother thought she should have $8,000.00 for the place. The defendants admitted they had no authority from their mother to sell the place. Ferris Zuspan testified he told S. T. Byers that neither he nor Newell had authority to sell the place and that he would have to deal directly with their mother in order to effectuate a sale.

Newell A. Zuspan testified that Mrs. Byers answered his letter of July 7, 1950, and stated Ferris was there at the time she was writing her letter and that it looked like the deal might go through, but gave no further information.

The theory on which plaintiffs relied for recovery is contained in Instruction No. 1 given by the court and read to the jury. This instruction told the jury that where one undertakes to bind another without being authorized or empowered so to do, he thereby renders himself personally responsible, even though he, in so undertaking,

acted in the utmost good faith and honestly believed he was so authorized. Said instruction further told the jury that if they find and believe from the evidence that Newell A. Zuspan represented to plaintiffs that he had authority to sell the land and that the plaintiffs relied on said representation and that the plaintiffs had entered into an agreement with said Newell A. Zuspan to purchase said land and that the said Newell A. Zuspan failed to complete the transfer of the title to said land to plaintiffs and if they further find that the said Newell A. Zuspan did not have authority to sell same, then they were to find for the plaintiffs and against the said defendant Newell A. Zuspan.

Defendant, Newell A. Zuspan, in his brief admits that the evidence was sufficient to justify the jury in finding that said defendant held himself out, to the plaintiffs, as an agent of his mother, authorized by her to sell her farm and it was further admitted that, in fact, he was not so authorized. Plaintiffs contend that where one undertakes to bind a principal without being authorized so to do, he thereby renders himself personally responsible, even though he acted in utmost good faith and honestly believed he was authorized. They cite in support of this contention, Lingenfelder v. Leschen, 134 Mo. 55, 34 S.W. 1098; Griswold v. Haas, 277 Mo. 255, 210 S.W. 356; Robinson v. Pattee et al., 359 Mo. 584, 222 S.W. 2d 786, and 3 C.J.S., Agency, §§§ 206, 207 and 208.

The best statement of the rule applicable to the facts in this case is found in Griswold v. Haas, supra, wherein the court said:

"The general rule, *subject to exceptions not here involved,* which is supported by reason and the weight of authority, is that, if one represents himself as the agent of a disclosed principal and attempts to contract in the name of such principal without authority or in excess of his authority, he becomes liable to the third party; not on the contract, unless it contains apt words to bind him, but for breach of the express or implied covenant of authority, * * * *. The decisions in this state are in accord with this rule. (Citing cases.)

\* \* \* \* \* \*

" * * * * the measure of recovery is the damage suffered by breach of the warranty of authority." (Emphasis ours.) 210 S.W. l.c. 357, 358.

The liability of the agent, as will be noted from the above mentioned rule, is predicated on a breach of an express or implied warranty of authority.

Defendant does not question the existence of this rule and its applicability to a case where the contract entered into is one that would be binding on the principal, if the agent was authorized to act for the principal. He contends that the general rule as announced in the

case of Griswold v. Haas, supra, is subject to the exception stated in 3 C.J.S., Agency, § 212, which is as follows:

"The general rule that a purported agent is personally responsible if he enters into an unauthorized contract on behalf of an assumed principal, * * *, is subject to the qualification that if the contract is one which would be of no legal value and which the law would not enforce against the principal, even if it were authorized, the agent is not personally liable in contract or in tort, unless by some apt expression he guarantees the contract or assumes it himself, for otherwise the anomaly would exist of giving a right of action against the assumed agent for an unauthorized representation of his power to make the contract, when a breach of the contract itself, if it had been authorized, would have furnished no grounds of action. *Within this category are contracts which are void under the statute of frauds.*" (Italics ours.)

It is the position of defendant, Newell A. Zuspan, that plaintiffs did not have a binding and enforceable contract against Rosa B. Zuspan, had this defendant been authorized to act as her agent in the sale of the farm and for this reason contends he is not personally liable for any breach of warranty of authority.

This defendant points out that the contract relied on by plaintiffs is one for the sale of real estate and is within the statute of frauds and must be in writing. He relies, in this connection, on Sec. 432.010, R.S. Mo. 1949, V.A.M.S., which provides, that:

"No action shall be brought * * * upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, * * * * unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some person by him thereto lawfully authorized, * * * * *"

Whether or not the letters mailed to the plaintiffs and signed by defendant Newell A. Zuspan are sufficient to satisfy the statute of frauds will be left until later. We must first dispose of this defendant's contention that the aforementioned exception to the general rule stated before is applicable in this case.

We have not been referred to any authorities in this state, by the parties, wherein this exception, sought to be applied by defendant Newell A. Zuspan, has been discussed or ruled on. This defendant, in his brief, relies on the aforementioned statement from Corpus Juris Secundum and the cases of Bloom v. Young et al., 205 Ky. 142, 265 S.W. 501, and Little v. Childress (Texas) 12 S.W. 2d 648, affirmed in 17 S.W. 2d 786. In the case of Bloom v. Young et al., supra, plaintiff charged that defendants represented to him that they were agents of Emma R. and J. T. Bottomlee and as such contracted to sell him a house and lot owned by the Bottomlees. The petition did not allege that

the contract was in writing. It alleged, however, that the Bottomlees did not consummate the deal by making the deed to him, but that they sold and conveyed the property to another. The petition further alleged that at the time the contract was made the defendants were not the agents of the Bottomlees, and had no authority to sell the house and lot or to contract for its sale as their agents and because of their deceit in the particulars mentioned became liable to plaintiff for damages suffered by him. The trial court sustained a general demurrer to the petition holding that it did not state a cause of action. The appellate court discussed the rule of the agent's liability on the warranty of authority where the agent has no authority to represent the principal. It further discussed the exception to the rule as we have stated it above, from 3 C.J.S., Agency, §212. The court then said:

"The principle of law embodied in the quotation above (the exception to the rule found in 3 C.J.S., Agency, §212) seems to us to be conclusive of the question now before us. The contract sued on herein, for the nonperformance of which appellant seeks to recover damages, is such as is required by subsection 6 of section 470, Carroll's Ky. Statutes 1922, (Statute of Frauds) to be in writing to be binding. It was a contract for the sale of real estate. It was not in writing. If the appellees (defendants) had been the agents of the Bottomlees, and had had authority from them to sell the house and lot to appellant, (plaintiff) and had orally contracted with appellant to do so, the owners of the property would not have been bound, nor would appellees as agents have been bound, because under our statute of frauds such contracts to be binding must be in writing and be signed by the parties." (Parentheses ours.) 265 S.W. 501, l.c. 502.

The case of Little v. Childress, supra, was one wherein the plaintiff contracted with one of the holders of an oil and gas permit on the basis of representations that such holder had authority to represent his associates. The court held that the contract for the sale of interest in minerals was one within the Statute of Frauds and was required to be in writing, and further held that the plaintiff was not entitled to recover from the agent because the contract was not in writing. In this case the appellant claimed that his cause of action against the agent was not within the Statute of Frauds, because he had sued in the alternative for damages from the agent for falsely representing himself to have authority to represent his associates. In answering this contention the court said:

"On this question we agree with the Court of Civil Appeals in the case of Morrison v. Hazzard et al. (Tex. Civ. App.) 88 S.W. 385, in which it said:

" 'Where the contract is void under the statute of frauds, the agent making it, though not authorized by his alleged prin-

cipal, is not liable thereon. The alleged principal not being bound, the assumed agent would not be.'" (12 S.W. 2d l.c. 650, 651.)

We think the same reason given in the two cases discussed aforesaid should be applied to the case before us, if there is no contract within the Statute of Frauds. If the alleged contract would confer no rights on plaintiffs against Rosa B. Zuspan, owner of the land, because it did not meet the requirements of the Statute of Frauds, it should not be enforceable, either directly or indirectly, against any one else. It is the plain intent of the Statute of Frauds that any contract made for the sale of lands shall be in writing and signed by the party to be charged therewith. If there is no such writing the plaintiff has not been injured by the misrepresentation and has lost nothing, for he would have gained nothing if the representation had been true. Plaintiffs had no right to rely upon a contract that is insufficient under the law. The plaintiffs in order to recover must do so under a contract valid in form. If the contract is invalid and unenforceable, in legal contemplation, the plaintiffs have suffered no injury. Kent v. Addicks, 126 Fed. 112; Baltzen et al. v. Nicolay, 53 N.Y. 467; Dung v. Parker, 52 N.Y. 494. We are of the opinion that plaintiffs must show the existence of a written contract, sufficient to satisfy the requirements of Sec. 432.010, R.S. Mo. 1949, V.A.M.S. (Statute of Frauds). Do the letters of July 7, 1950, and August 14, 1950, signed by Newell A. Zuspan meet the requirements of the aforesaid statute?

In the case of Wheeler v. Blanton, Mo. App., 253 S.W. 2d 497, l.c. 499, we said:

"The note or memorandum required by the statute of frauds need not be contained in a single document. On the contrary, two or more writings properly connected may be considered together, and elements missing or uncertain in one may be supplied or rendered certain by another, and their sufficiency will depend upon whether, taken together, they meet the requirements of the statute as to content. Logan v. Waddle, Mo. App., 252 S.W. 469, affirmed by Supreme Court, 315 Mo. 980, 287 S.W. 624."

In this same case we set out the elements necessary to be present in order that the requirements of the statute of frauds be satisfied. Those elements are: First the parties; Second, the subject matter; Third, the consideration or price. Because of the conclusion we have reached we will only concern ourselves with the second of these elements, i.e., the subject matter. The subject matter involved in this proceeding is the farm land sought to be purchased by the plaintiffs. There must be a sufficient description of the land sold. The rule to be followed, in determining the sufficiency of the description of the land to be sold, may be found in Meramec Portland Cement and Material Company v. Robert Kreis, 261 Mo. 160, l.c. 169, 168 S.W. 1148, l.c. 1150, wherein the court quoted approvingly the following from Fox v. Courtney, 111 Mo. 147, 20 S.W. 20:

"The writing required by the statute 'must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties, ' * * * * * * * * * * 'The writing must be a guide to find the land, must contain sufficient particulars to point out and distinguish the tract from any other.' ''

This same rule in more detail is stated in Pomeroy on Specific Performance of Contracts (Second Edition), paragraph 90, as follows:

"The subject matter of the agreement must all be included in the memorandum, and must be described with sufficient exactness to render its identity certain upon the introduction of extrinsic evidence simply disclosing the situation of the parties at, and immediately before, the time of making the contract. Parol evidence is admissible to show the surrounding circumstances and position of the parties, and thus to explain the meaning and application of the descriptive language, and thereby to identify the subject matter; * * * but if, by this means, the subject-matter is not certainly ascertained, parol evidence cannot be used to go farther and actually supply a substantive part of the agreement, which has been entirely omitted from the memorandum or insufficiently expressed.''

In the two letters before us, which are alleged to be the contract for the sale of the land, we find the following to be the only references that would serve to identify the land to be sold: "I thought you would offer a price because you know what *it* will produce. We will list *it* for 40.00 acre or $6400.00 * *.'' "Mother has agreed to sign a sale contract for the *farm*.'' There is nothing in these words that serves to identify the farm to be sold. We have examined many cases involving the sufficiency of the description of land, the subject matter of a sales contract, and we think the case of Shy v. Lewis, 321 Mo. 688, 12 S.W. 2d 719, is ample authority to hold that there was no contract of sale in this case, sufficient to satisfy the requirements of the Statute of Frauds. In that case the defendant and plaintiff signed the following memorandum: "Contract to Farm of T. C. Shy by Frank Shy to Levi Lewis. Terms: $4,000.00 down when abstract is delivered and principal of $20,687.50 to run 5 years at 5 per cent. Interest, a thousand or more at each interest paying date on $20,687.50 and if place is sold as above stated or any part or all may be paid cash down at time of sale. Levi Lewis, Frank Shy.'' This memorandum was entered into following a sale held as the result of advertisements which described the farm as one of 395 acres, situated 2½ miles southwest of Otterville. It appeared from the evidence that for a number of years defendant had rented a part of the land. In ruling that the memorandum contained an insufficient description of the land to be sold, the court said:

"Out of the infinite variety of descriptions involved in cases of this kind a few general rules have been evolved, which are to be applied as tests in the given case. The following statement appears in 20 Cyc. p. 270: 'In general the description of the land in a memorandum of a contract for the sale of lands must be sufficiently definite to identify the land by its own terms or by reference in it to external standards in existence at the time of the making of the contract and capable of being determined beyond dispute. * * * * * * ' Again, in 27 C. J. p. 273, § 324, we find the following: 'An omission of the county, state, and city, town, or village wherein the property is located, renders the writing insufficient where it contains nothing from which the omitted statement may be inferred and extrinsic evidence is necessary for the purpose of supplying, as distinguished from applying the description. * * * * * ' Again, it has been held that 'a description of the land by a familiar local appellation which refers to a definite tract may be sufficient.' '' 12 S.W. 2d l.c. 721.

After setting out the aforesaid rules to be applied as tests in the case before it, the court ruled as follows:

"The memorandum in this case contains no description other than that embodied in the words 'farm of T. C. Shy,' and it contains no mention of any other external fact; no mention of county or state, or of proximity of the farm to any town or known place; and the number of acres is not stated; nor can the number of acres be calculated from the contents of the memorandum, nor is there reference to any auxiliary writing * * * no evidence was introduced for the direct purpose of showing there was a farm generally known as the T. C. Shy farm, or that the farm in controversy was popularly and generally so known." 12 S.W. 2d l.c. 721.

What was said by the Supreme Court in the Shy case could and should be said about the writings in the case at bar. It is true there is a reference in one of the letters to the number of acres in the farm, but we do not believe that is sufficient to distinguish it from the facts in the Shy case. If anything, the memorandum in the Shy case contains more descriptive matter when it referred to the "farm of T. C. Shy." In many other cases we have examined, descriptions of greater content then that in the Shy case have been held insufficient. For instance, in Meramec Portland Cement and Material Company v. Robert Kreis, supra, the words, "land south of the Miss. Pac. R.R. tracks" and "forty-some-odd acres of bottom land you have adjoining us at Sherman, Missouri" were held to be indefinite and uncertain and therefore an insufficient description of the land sought to be affected. We must, therefore, hold that the two letters signed by defendant, Newell A. Zuspan contain an insufficient description of the land intended to be sold and for this reason do not fulfill the requirements of the Statute

of Frauds. Having so held, we likewise rule that this defendant, even though not authorized to act as agent for his mother, is not liable in this or any other action for damages alleged to have been suffered by the plaintiffs.

Accordingly, that part of the judgment in favor of plaintiffs and against defendant, Newell A. Zuspan, is reversed and the cause is remanded with directions to enter a new judgment in favor of both defendants. *Anderson, P. J., and Bennick, J.,* concur.