Richard FRAME, Plaintiff–Appellant,

v.

BOATMEN'S BANK OF CONCORD VILLAGE, and Boatmen's National Bank, Defendants–Respondents.

No. 55839.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 19, 1989.

Paul C. Hetterman, Marina Jane Matoesian, St. Louis, for plaintiff-appellant.

Joseph E. Martineau, Robert B. Hoemeke, James L. Matchefts, St. Louis, for defendants-respondents.

STEPHAN, Judge.

Richard Frame appeals from the granting of a motion for summary judgment in favor of Boatmen's Bank of Concord Village (Boatmen's) and Boatmen's National Bank of St. Louis (Boatmen's National). Appellant filed his second amended petition in four counts against Boatmen's and Boatmen's National alleging breach of contract, fraud, prima facie tort, and negligent misrepresentation. We affirm the trial court's judgment on Counts I, II, and III; we reverse Count IV, the negligent misrepresentation claim.

Upon review of the granting of a motion for a summary judgment, we view the record in the light most favorable to the party against whom summary judgment was entered and accord to that party the benefit of every doubt. *Union Electric Co. v. Clayton Center Ltd.,* 634 S.W.2d 261, 262 (Mo.App.1982). "If a genuine issue of fact exists, summary judgment cannot be granted. A genuine issue of fact exists when there is the slightest doubt about the facts." *Id.* at 263. The fact must be a material one which has legal probative force on a controlling issue. *Id.*

On September 6, 1983, appellant entered into a sales contract with R.C.T. Properties to purchase the Concord Bowl, a bowling alley, and the five acres of land surrounding it for two million dollars. The agreement provided that the purchase was contingent upon appellant's obtaining financing by October 10, 1983. Appellant tendered ten thousand dollars earnest money to seller and the same amount was due upon acceptance. Appellant contacted his banker, James Thompson, at Missouri State Bank to obtain financing. Missouri State Bank was not interested in financing so large a loan, so Thompson suggested appellant contact Boatmen's. Thompson and appellant later met with Mark Murray, a vice president of Boatmen's. The three discussed financing arrangements in general terms; Boatmen's was willing to lend eighty percent of the appraised value or the sale price, whichever was lower. The required appraisal, however, was not scheduled to be completed until after the financing contingency date set forth within appellant's sales agreement. In early October, the appraiser verbally assured appellant that the appraisal would be for at least two million dollars. Appellant then called Murray at Boatmen's, explained he was risking twenty thousand dollars earnest money, and requested assurance that Boatmen's would extend the loan. According to appellant, Murray responded affirmatively.

On October 8, 1983, appellant released the financing contingency in exchange for the seller's agreement to a thirty day extension of the November 1, 1983, closing date. Two days later, appellant and Murray discussed a repayment schedule and interest rates. In mid-November, the appraisal came in at 2.1 million dollars. In late November, Murray informed appellant that Boatmen's National had rejected the loan. The Concord Bowl was thereafter sold to another purchaser and appellant forfeited five thousand dollars earnest money. Appellant subsequently sued Boatmen's and Boatmen's National. Summary judgment was granted on respondents' motion. This appeal followed.

In Count I of his second amended petition, appellant had alleged that respondent had breached an oral contract to lend him $1.6 million to purchase Concord Bowl and the surrounding five acres. The trial court granted summary judgment on Count I, appellant's contract claim, based on respondents' motion asserting that the alleged oral loan agreement was barred by the Statute of Frauds and that the agreement lacked mutuality of obligation (consideration). Appellant states the trial court erred in granting summary judgment on Count I because an issue of material fact existed whether the parties' contract violated the Statute of Frauds or was supported by consideration.

Missouri's Statute of Frauds provides that "[n]o action shall be brought ... to charge any person ... upon any contract made for the sale of lands ... or any interest in or concerning them," unless such contract agreement is in writing. § 432.010, RSMo 1986. Appellant argues, however, that the contract was merely an agreement to lend money and did not, as the trial court found, contemplate "an interest in or concerning land by way of a mortgage or lien on the property in question." Appellant characterizes the contract between the parties as "simply a promise on the part of defendants to lend monies to plaintiff, and a promise on the part of plaintiff to repay said monies with interest." Appellant observes that the collateral or security interest involving the bowling alley property was a separate agreement, totally ancillary to Boatmen's agreement to lend him money to purchase the bowling alley, because he could have offered a variety of different types of collateral to secure his debt to defendants. Appellant concludes, therefore, that the oral agreement was not within the Statute of Frauds and did not fail for lack of any writing.

We fail to see how the security interest in the real estate can be isolated from the contract for the loan of money. "A note and mortgage, or deed of trust, given to secure it, both executed at one time, are one contract and must be construed together ...". *Wilson v. Reed*, 193 S.W. 819,

820[6] (Mo.1917). It has been said that "[a]n oral contract to mortgage or give security on real estate is unenforceable." 3 S. Williston, *A Treatise on the Law of Contracts* § 491 (3d ed. 1960). Surprisingly, no Missouri cases address the issue squarely; those our research has disclosed are only somewhat helpful. *See, e.g., Hackett v. Watts*, 138 Mo. 502, 40 S.W. 113 (1897); *Bender v. Zimmerman*, 122 Mo. 194, 202, 26 S.W. 973 (1894) (oral agreement by which subsequent advances shall constitute a lien on land held subject to the statute of frauds); *Wendover v. Baker*, 121 Mo. 273, 297–98, 25 S.W. 918 (1894) (loan secured by a mortgage cannot be forgiven by oral promise).

In *Hackett v. Watts*, 138 Mo. 502, 40 S.W. 113, defendant purchased a tract of land but, instead of receiving a deed, he accepted a written instrument obligating the seller to execute a general warranty deed upon payment of the purchase money. Defendant then sought a loan from a bank and asked plaintiffs to act as sureties. Defendant promised to transfer his land sale contract as security, and to execute a mortgage after obtaining a final deed. Plaintiffs agreed to sign a note as sureties and defendant deposited the land contract with the bank. In determining that the deposit of the land contract with the bank constituted an equitable assignment, our Supreme Court declared that "[a]s the evidence showed that the promise by [defendant] to plaintiffs to execute to them a mortgage on the Cameron property was by parol only, it was clearly within the statute of frauds, and nonenforceable." 40 S.W. at 115.

Here, the transfer of the mortgage interest was an integral part of the contract to lend money, and, more importantly, a necessary element in order to find that the terms of the contract were reasonably definite, rendering the contract otherwise enforceable. Thus, if we accept appellant's position that the evidence establishes the existence of an oral contract, we must reject appellant's theory that neither this contract, nor any of its parts, constituted the "sale of lands" or "an interest in or

**120**

concerning them." Accordingly, we hold that when a mortgage is given on land, the lien which is created falls within the ambit of our Statute of Frauds. We agree with the trial court's ruling that the parties' oral agreement was unenforceable since it was clear the parties intended that appellant execute a mortgage on the Concord Bowl property as security for the loan.

■ Respondents, furthermore, did not waive the Statute of Frauds defense. In *Shaffer v. Hines*, 573 S.W.2d 420, 422 (Mo. App.1978), this court held that a defendant did not waive the Statute of Frauds defense even though it was not interposed until the start of trial. Respondents here first raised it as a defense in their answer to appellant's second amended petition. Rule 55.33(a) authorizes the trial court to allow a party to amend its pleadings when justice requires it. Appellant had ample opportunity to counter any reliance by respondents on the Statute of Frauds. We fail to see, therefore, how appellant was prejudiced by the timing of respondents' assertion of this defense. The trial court did not err in allowing respondents to raise the Statute of Frauds.

■ Appellant's claim that respondents were estopped from using the Statute of Frauds is also ineffective. An essential element of estoppel is that the respondent receive a benefit resulting from appellant's reliance. *Jones v. Linder*, 247 S.W.2d 817, 825 (Mo.1952). Here, there was no allegation set forth that respondents received a benefit from not lending money to appellant. In addition, appellant is precluded from using the doctrine of promissory estoppel as a sword to create a cause of action. *Shaffer v. Hines*, 573 S.W.2d at 422.

We conclude summary judgment was properly granted in favor of respondents

on Count I of appellant's second amended petition.

In Count II, appellant alleged that Murray made certain representations, which led appellant to believe that only Boatmen's (through its employee Mark Murray) and not Boatmen's National, was responsible for approving his loan and that Murray's representations were material, false, and recklessly made in ignorance of the truth. To succeed on a claim of fraud, appellant must prove nine elements.[1] One of these elements includes the speaker's knowledge of the falsity of the representation made, or his ignorance of its truth. *Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d at 519. If appellant fails to establish this or any other element, his claim fails. *Id.*

■ In the case of a fraudulent representation, it is sufficient to show that the representations were made by one with the consciousness that he was without knowledge of their truth or falsity, when, in fact, they were false. *Ackmann v. Keeney–Toelle Real Estate Co.*, 401 S.W.2d 483, 489 (Mo. banc 1966). The truth or falsity of the representation, however, is determined at the time it was made, and at the time it was intended to be relied upon. *Rigby Corp. v. Boatmen's Bank and Trust Co.*, 713 S.W.2d 517, 540 (Mo.App. 1986).

■ We are not persuaded by appellant's argument that Boatmen's failure to disclose another bank's participation and approval in a loan is tantamount to an intent to defraud. Appellant made no allegation and offered no evidence establishing that respondents had a duty to disclose such information. *See, Centerre Bank of Kansas City v. Distributors, Inc.*, 705 S.W.2d 42, 53[9] (Mo.App.1985). "Fraud is not presumed and an inference of its presence can be drawn only if the evidence rises above mere suspicion and points logically and con-

---

**1.** To succeed on a claim of actionable fraud, appellant must prove:

1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity, or his ignorance of its truth, 5) the speaker's intention that it should be acted on by the person and in the manner reasonably contem-

plated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequential and proximately caused injury.
*Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 519 (Mo. banc 1988).

vincingly to fraud." *Weaver v. Travers*, 631 S.W.2d 81, 83 (Mo.App.1982). Accordingly, respondents were entitled to summary judgment on Count II.

■■■ In Count III, appellant alleged prima facie tort. A cause of action for prima facie tort requires that plaintiff establish four elements, including an actual intent to cause injury to the appellant. *Porter v. Crawford and Co.*, 611 S.W.2d 265, 268 (Mo.App.1981). The intent to cause injury means an actual intent to cause harm to the plaintiff, "not merely an intent to do the act purportedly resulting in the claimed injury." *Lundberg v. Prudential Ins. Co. of America*, 661 S.W.2d 667, 670 (Mo.App.1983). "This definition of intent contains aspects of malice, perhaps a wicked or evil motive." *Gary Surdyke Yamaha, Inc. v. Donelson*, 743 S.W.2d 522, 525 (Mo.App.1988).

This requirement is dispositive of appellant's claim. Evidence which would establish that either Murray or respondents intended to injure appellant was totally lacking. Appellant himself testified that he had no reason to believe that Murray had any ill will or spite toward him, and he did not know if Murray intended to deceive him. Thus, appellant's own testimony defeats any allegation that Murray or respondents acted intentionally to cause injury. Such allegation by appellant is purely speculative and does not give rise to an inference of malice or any wicked or evil motive. Appellant's point disputing the grant of summary judgment on his claim of prima facie tort is denied.

■■ Appellant's remaining point claims that the trial court misconstrued the doctrine of negligent misrepresentation in granting summary judgment in favor of respondents on Count IV of his petition. We agree.

The elements of a claim of negligent misrepresentation are:

1) that defendant supplied information in the course of his business or because of some other pecuniary interest; 2) that because of a failure by defendant to exercise reasonable care or competence, the information was false; 3) that the information was intentionally provided by defendant for the guidance of a limited group, including plaintiffs, in a particular business transaction; and 4) that in relying on the information, plaintiffs suffered a pecuniary loss.

*B.L. Jet Sales, Inc. v. Alton Packaging*, 724 S.W.2d 669, 672 (Mo.App.1987). Privity is not an element of the tort of negligent misrepresentation. *Id.*

Under the first requirement, appellant's allegations that Boatmen's Bank is in the business of making loans and that its vice president Mark Murray supplied appellant with loan information were uncontroverted. Further, a pecuniary interest is self-evident since the bank's action of making loans is a profit-oriented enterprise.

The second element, failure to exercise reasonable care and competence resulting in false information, is further clarified by the Restatement (Second) of Torts and by case law. The Restatement provides in part:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). Following this section, Comment e to subsection one, captioned "Reasonable care and competence," states as follows:

When the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging in it. Thus the recipient is entitled to expect that such investigations as are necessary will be carefully made and that his informant will have normal business or professional competence to form

an intelligent judgment upon the data obtained.

*Id.*

Although no Missouri court appears to have expressly adopted § 552B, Missouri case law is in accord with the *Restatement* view. *B.L. Jet Sales, Inc.*, 724 S.W.2d at 673. For example, in *AAA Excavating, Inc. v. Francis Construction, Inc.*, 678 S.W.2d 889 (Mo.App.1984), plaintiff alleged that the subcontractor negligently supplied false information upon which the general contractor relied to his pecuniary detriment. We held these allegations were sufficient to support a claim of negligent misrepresentation. *Id.* at 893–94. In *B.L. Jet Sales, Inc. v. Alton Packaging*, we determined that defendant's negligence in failing to enter certain information in aircraft logbooks was tantamount to supplying false information. 724 S.W.2d at 672–73.

Here, Murray represented to appellant that the loan was contingent upon an appraisal of two million dollars or more. Despite Murray's affidavit to the contrary, appellant stated in his deposition that Murray failed to warn appellant that a second contingency, the approval by Boatmen's National of the loan amount, was also required. According to appellant, Murray essentially represented to appellant that he had unconditional authority to make all loans when, in fact, he did not have such authority. Under these circumstances, we believe a genuine issue of fact exists as to whether Murray failed to exercise reasonable care and, as a result, supplied false information to appellant.

Appellant's deposition also raises a genuine issue of material fact regarding the third and fourth elements of negligent misrepresentation. In his deposition appellant testified that he informed Murray of the financing contingency and that he would be risking twenty thousand dollars earnest money by its removal. Consequently, in making the statement that the loan would be forthcoming, Murray intentionally provided that information to appellant for guidance, knowing that appellant would rely upon Murray's statement in deciding whether to remove the financing contingen-cy. The financing contingency was removed and appellant suffered a pecuniary loss by having his earnest money forfeited.

Respondents maintain that the trial court properly granted summary judgment on appellant's negligent misrepresentation count. Respondents assert the element of reliance was not established because appellant's reliance on any statements by Murray was totally unjustified for two reasons. First, the Statute of Frauds, which rendered their oral loan commitment void, operated as a matter of law to bar any claim that such reliance was justifiable. Second, appellant had access to the necessary information to determine the truth or falsity of any representations by Murray and appellant failed to show that he had exercised a reasonable degree of prudence for his own welfare.

Respondents rely on *Byers v. Zuspan*, 241 Mo.App. 1103, 264 S.W.2d 944 (1954), for the proposition that, as a matter of law, a party has no justifiable right to rely upon a contract that is insufficient under the law. Respondents emphasize the following excerpt from *Byers:*

> It is the plain intent of the Statute of Frauds that any contract made for the sale of lands shall be in writing and signed by the party to be charged therewith. If there is no such writing the plaintiff has not been injured by the misrepresentation and has lost nothing, for he would have gained nothing if the representation had been true. Plaintiffs had no right to rely upon a contract that is insufficient under the law. The plaintiffs in order to recover must do so under a contract valid in form. If the contract is invalid and unenforceable, in legal contemplation, the plaintiffs have suffered no injury.

264 S.W.2d at 949. Based on this language, respondents conclude appellant's cause of action for negligent misrepresentation, like his claim for fraud, must fail because his reliance was totally unjustified as a matter of law under the Statute of Frauds.

*Byers* is not controlling here. In *Byers* plaintiffs sued two brothers who had mis-

represented their authority to act for their mother in the sale of a farm owned by her. 264 S.W.2d at 945. The plaintiffs' suit sought recovery of damages for breach of covenant of authority to sell land. *Id.* at 947. This court held that the alleged contract to sell land was unenforceable because it did not contain a description of the land sufficient to satisfy the requirements of the Statute of Frauds. *Id.* at 951. The court then concluded that defendants, although not authorized to act as agent for their mother, the owner, in the sale of land, were not liable to purchasers for any breach of covenant of authority. *Id.*

Unlike *Byers*, appellant's count IV for negligent misrepresentation sounded in tort, not contract. Furthermore, appellant brought his action for negligent misrepresentation directly against Boatmen's and Boatmen's National, and not the Bank's employee Mark Murray. In *Byers*, the frustrated purchaser attempted to sue the unauthorized agent. Thus, while we agree that *Byers* bolsters respondents' position that the Statute of Frauds bars appellant's contract count, we do not believe *Byers* requires that we hold, as a matter of law, the Statute of Frauds bars his tort claim for negligent misrepresentation against respondents.

 Respondents present an alternative reason that justifiable reliance was absent, to support the trial court's grant of summary judgment on appellant's negligent misrepresentation count. Respondents highlight portions of the depositions by Mr. Kennedy, appellant's real estate agent, and Mr. Thompson, appellant's friend and banker, to establish that appellant had been told or warned about the probable falsity of Murray's misrepresentation. Respondents cite *Centerre Bank of Kansas City v. Distributors, Inc.*, 705 S.W.2d 42 (Mo.App. 1985) as primary authority for their position.

In *Centerre Bank of Kansas City v. Distributors, Inc.*, 705 S.W.2d 42 (Mo.App. 1985), defendant corporation had counterclaimed against Centerre Bank alleging that an officer of the bank had promised to extend credit to the corporation in order to induce the execution of personal guaranties by the principals of the corporation on a note which the bank had classified as a "problem note". The bank called the note three days after the guarantors had signed. The Western District held that the bank had no duty to disclose that it had classified the note as a problem note because no confidential relationship existed between the bank and the principals of the corporation, the guarantors of the note. *Id.* at 53. The Western District observed that the corporation's principals had equal access to information concerning the financial status of the maker of the note; therefore, they bore the responsibility to investigate for themselves before signing the note as guarantors. *Id.* However, other cases have observed that opportunity for investigation will not of itself preclude the right of reliance. *Fox v. Ferguson*, 765 S.W.2d 689, 691 (Mo.App.1989); *Iota Management Corp. v. Boulevard Investment Co.*, 731 S.W.2d 399, 414 (Mo.App.1987). In *Carnahan v. American Family Mutual Insurance Co.*, 723 S.W.2d 612, 615 (Mo.App. 1987), we echoed W. Keeton and W. Prosser, *The Law of Torts*, § 108 (1984) which states "The question is frequently for the jury whether the statement made might justifiably induce the action taken."

Appellant has repeatedly emphasized that at no time did Murray tell him Boatmen's National would have to participate in the loan or that the respective bank boards had to secure approval of the loan. He further attested that at no time did he know that the loan or any part thereof, or its approval required input from Boatmen's National. He testified that at all times he believed Boatmen's was the only financial institution responsible for the loan and that Murray, vice president of the bank and head of the commercial loan department, was in charge of approving appellant's loan. Despite respondents' focus on the deposition of Kennedy and Thompson, appellant's own testimony was substantial that he was entitled to rely on Murray's statements that appellant had the loan. Whether the statement was a negligent misrepresentation is a factual issue. The reasonableness of appellant's reliance, nor-

mally a matter for the jury's determination, was sufficiently established as an element to withstand summary judgment. The trial court erred in granting summary judgment on Count IV for negligent misrepresentation.

The judgment of the trial court is affirmed on appellant's Counts I, II, and III, but reversed and remanded for further proceedings on Count IV.

SMITH, P.J., and SATZ, J., concur.