**PACIFIC CARLTON DEVELOPMENT CORPORATION, Woodside Housing Resource Foundation, Inc., Respondents,**

v.

**Brent M. and Lisa M. BARBER, Appellants.**

**No. WD 61006.**

Missouri Court of Appeals, Western District.

Jan. 28, 2003.

Steven C. Effertz, Independence, MO, for appellants.

Christian J. Kelly, Brett D. Anders, Co–Counsel, Kansas City, MO, for respondents.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Chief Judge.

Brent Barber and Lisa Barber ("Appellants") appeal from the trial court's grant of summary judgment awarding Pacific Carlton Development Corporation ("Pacific Carlton") and Woodside Housing Resource Foundation ("Woodside Housing") (jointly "Respondents") unpaid balances due on two promissory notes, as well as interest, attorney's fees and costs.

On September 19, 2000, Appellants signed and delivered one promissory note

to Woodside Housing and one promissory note to Pacific Carlton. The terms of each note were identical: each was for the principal amount of $155,500, with interest set at $77,750. The notes provided that in the event of default, interest would accrue on all unpaid balances at twelve percent per month. The notes stated that the proceeds were for business purposes and that the loan was a business loan pursuant to §§ 408.015(2)[1] and 408.035 RSMo.[2] Principal and interest on each note was due on October 19, 2000. The parties later agreed, however, to extend the due dates of each note to March 19, 2001. The notes were secured by a deed of trust and mortgage encumbering real estate in Jackson County, Missouri, and Wyandotte County, Kansas. The notes provided that Appellants would pay the expense of enforcing the notes or any security documents.

Appellants failed to pay any of the principal or interest due on the notes. On May 24, 2001, Respondents filed separate petitions to collect the amounts due on their respective notes. On June 22, 2001, Appellants filed their answers. On July 18, 2001, Respondents filed first-amended petitions. On August 16, 2001, Appellants filed answers to the first-amended petitions. Appellants claimed that the notes were part of a larger business plan between the parties and, as part of the plan, Appellants had transferred property to Respondents that satisfied the amounts due on the notes. Accordingly, Appellants claimed that Respondents' claims were barred by the affirmative defenses of accord and satisfaction, set-off and estoppel.

On September 5, 2001, Respondents filed their motions for summary judgment. Respondents asserted that Appellants executed and signed the notes and failed to pay any of the principal or interest due. Henry Weinstein, president of Pacific Carlton, and Jay Schippers, president of Woodside Housing, filed affidavits to support their motions for summary judgment. Mr. Weinstein and Mr. Schippers both acknowledged that their companies had conducted prior business with Appellants and that Brent Barber purchased properties in the name of each company at tax foreclosure sales. As part of those transactions, transfers of property had occurred between Appellants and Respondents. However, Mr. Weinstein and Mr. Schippers stated that the business transaction Appellants referred to in their answer was independent of the loan agreement and that Respondents had not agreed to accept property in lieu of full payment of the amounts due on the notes.

Shortly thereafter, Respondents filed a motion to consolidate, and the court entered its order of consolidation on October 1, 2001.

On November 5, 2001, Appellants filed their suggestions in opposition to the motions for summary judgment. They asserted that prior to executing the notes, they engaged in lengthy discussions with Respondents involving a business plan. Pursuant to that plan, Respondents were to sign deeds to the properties secured by the mortgage so that the properties could be sold and the proceeds used to repay the

1. Section 408.015(2) provides: " 'Business loan' shall mean a loan to an individual or a group of individuals, the proceeds of which are to be used in a business or for the purpose of acquiring an interest in a business. The term shall also include a loan to a trust, estate, cooperative, association, or limited or general partnership."

2. Section 408.035 provides: "Notwithstanding the provisions of any other law to the contrary, it is lawful for the parties to agree in writing to any rate of interest, fees, and other terms and conditions in connection with any: ... (2) Business loan of five thousand dollars or more."

balances due on the notes. In addition, Respondents were to release the deeds of trust so that those properties could be sold. Appellants averred that they were unable to repay the balances due on the notes because Respondents refused to comply with the "business plan." Appellants admitted that March 19, 2001, was a "projected maturity date" for the notes but contended that the date was discussed with the understanding that the Court Administrator's Office of Jackson County, Missouri, would issue deeds to the properties purchased with the proceeds of the note in two to three months rather than six to eight months as actually occurred.

Respondents filed additional suggestions to support their motions for summary judgment, in which they denied the existence of a business plan between the parties. Respondents also alleged that Appellants' claims regarding the business plan involved the transfer of real property and was therefore barred by the Statute of Frauds. The trial court entered summary judgment in favor of Respondents on December 19, 2001. The judgment awarded each company the following amounts:

> [P]rincipal in the amount of $155,500; interest through May 19, 2001 in the amount of $77,750; interest thereafter and through May 23, 2001 in the amount of $39,808; interest thereafter, including after the date of entry of this Judgment, at the per diem rate of $622; and for reasonable fees and costs incurred ... in connection with its efforts to collect the amounts due under the promissory note, including attorneys fees and costs, in the amount of $6581.01.

Appellants' motion for reconsideration was denied. This appeal follows.

Appellants argue in their only point on appeal that the trial court erred in granting summary judgment in favor Woodside Housing and Pacific Carlton. Appellants claim that Respondents failed to negate Appellants' affirmative defenses of set off and estoppel, which would have reduced or defeated Respondents' entitlement to payment of the notes.

Our review of the trial court's grant of summary judgment is *de novo*, and we apply the same criteria as the trial court in determining the propriety of summary judgment. *Langley v. Curators of Univ. of Mo.*, 73 S.W.3d 808, 810 (Mo.App. W.D. 2002). "Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law." *Mobley v. Baker*, 72 S.W.3d 251, 256 (Mo. App. W.D.2002) (citing *ITT Commercial Fin. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993)). "The court will review the record in the light most favorable to the party against whom judgment was entered, and will accord the non-movant the benefit of all reasonable inferences." *Calvert v. Mehlville R–IX Sch. Dist.*, 44 S.W.3d 455, 457 (Mo. App. E.D.2001). "Where the movant is a claimant, as in our case, to make a *prima facie* case for summary judgment, he is required to state with particularity in his motion all the undisputed material facts necessary to establish each and every element of his claim, referencing the pleadings, discovery or affidavits that demonstrate the lack of a genuine issues as to those facts." *Mobley*, 72 S.W.3d at 256. When a defendant properly pleads an affirmative defense, the movant also has the burden of showing that the defendant will be unable to prove one or more elements of the defense. *Welhoff v. Farm Bureau Town & Country Ins. Co.*, 54 S.W.3d 589, 594 (Mo.App. W.D.2001).

Respondents were required to plead facts establishing the elements of a suit on note, the three elements being: "(1) there exists a valid promissory note signed by

the maker; (2) there remains a balance due on the note; and (3) demand on the maker for payment has been made and refused, leaving the maker in default." *Mobley*, 72 S.W.3d at 257. Appellants admit that they executed and signed the notes, that the balances remain unpaid, and that they are in default. They contend that the trial court erred because they properly pleaded the defenses of set off and estoppel.

Appellant Brent Barber filed an affidavit to support his suggestions in opposition to summary judgment. Mr. Barber claimed that, prior to executing the notes, he discussed a business plan with Respondents which involved buying homes in Jackson County, Missouri, to renovate and sell for a profit. He asserted that Respondents provided funds to him so that he could purchase properties at a tax foreclosure sale in eastern Jackson County for rehabilitation. The properties were titled to Woodside Housing and Pacific Carlton. Mr. Barber averred that proceeds from the notes were to be used to rehabilitate purchased houses. Respondents were to sign deeds when the work was completed so that property could be transferred to purchasers. The proceeds from the sale were to be used to reimburse Respondents for the money spent at the tax sale and then to pay interest and finally principal on the notes. Mr. Barber further insisted, however, that Respondents told him that they would not sign any deeds for the properties purchased at the tax sale until the notes were fully paid.

As further security, Mr. Barber stated that he signed second deeds of trust to numerous properties that he already owned. The deeds provided security for the notes, as well as the money used to purchase the property at the tax sale. He claimed that Respondents were expected to sign releases on the second deeds of trust so that those properties could be sold. The proceeds from those sales were to go to pay the amounts due on the notes after the first deed of trust on each property was retired and the costs of sale paid. Mr. Barber averred that Respondents signed releases to the second deeds of trust and left them with a local title company. But when Mr. Barber sold one of the properties, Respondents refused to allow the company to file the release. As a consequence, he could not complete the sale, and the purchaser filed a claim against him, which he was forced to pay. Mr. Barber concluded by stating that, as a result of Respondents' failure to sign the releases and deeds, he was unable to sell the properties and repay the notes.

Appellants argue that they are entitled to the defense of set off because Respondents prevented them from closing on the sale of a house by refusing to allow a deed of release on the house to be filed. Appellants were then forced to pay a claim by the would-be purchaser of the property. Appellants' claim of estoppel is based on their allegation they executed the notes with the understanding that they would be allowed to rehabilitate the properties and sell them to pay the balances due on the notes.

Respondents deny the existence of a business plan and argue that Appellants' claims are barred by the Statute of Frauds. They contend that because the alleged business plan involved the transfer of real property the agreement would have been required to be in writing.

Section 432.010 RSMo 2000 provides:

No action shall be brought ... to charge any person ... upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof,

shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized....

■■■ Appellants' theory of the case was predicated on their contention that the promissory notes, deed of trust and mortgage were part and parcel of a larger non-written business plan. An essential element of that grander scheme was an oral agreement that Woodside Housing and Pacific Carlton would sign deeds to certain properties and that the properties would then be sold and the proceeds would be used to repay the notes. In addition, the plan called for Respondents to release deeds of trust so that that properties could be sold. Thus, the business plan involved sale of real estate to third parties and required, among other things, execution of deeds and deeds of release. But the sales, deeds and deeds of release were for the sole purpose of effectuating the essential element of the transaction, the loan of money and the giving of a lien on real estate to secure payment. We fail to see how such an arrangement can be said to involve something other than "the sale of lands ... or an interest in or concerning them." "[W]hen a mortgage is given on land, the lien which is created falls within the ambit of our Statute of Frauds." *Frame v. Boatmen's Bank of Concord Village*, 782 S.W.2d 117, 120 (Mo.App. E.D. 1989).

The facts in *Frame v. Boatmen's Bank of Concord Village* are not dissimilar to those in the instant appeal. In that case, the appellant alleged that the bank entered into an oral contract to lend him money to purchase a bowling alley and the surrounding five acres of real estate. *Id.* at 118. As part of the transaction, the loan was to be secured by a security interest in the bowling alley and real estate. *Id.* at 119. Appellant contended the bank

breached the oral agreement by refusing to make the loan. *Id.* The bank moved for summary judgment contending that the alleged oral loan agreement was barred by the Statute of Frauds. *Id.* The trial court granted summary judgment. *Id.* On appeal, the Eastern District of this court affirmed. *Id.* at 120. The court reasoned that the security interest in the real estate could not be isolated from the contract for the loan of the money and that it was an integral part of the transaction. *Id.* at 119. For that reason, the court held that "the parties' oral agreement was unenforceable since it was clear the parties intended that appellant execute a mortgage on the Concord Bowl property as security for the loan." *Id.* at 120.

For much the same reason, we hold that the oral agreement Appellants allege was entered into by the parties would be unenforceable and, therefore, their affirmative defense of set off could not be established.

■■■ Respondents further contend that Appellants are barred from asserting an oral modification to the agreement embodied in the notes. In general, contracts that are required by the statute of frauds to be in writing may not be modified by an oral agreement. *Klinckman v. Pharris*, 969 S.W.2d 769, 772 (Mo.App. S.D.1998). "Subsequent oral variations or amendments of a written contract within the statute of frauds will support neither an action nor a defense to an action." *Rouse Co. of Mo., Inc., v. Boston Seafood of St. Louis, Inc.*, 894 S.W.2d 190, 191–92 (Mo. App. E.D.1995).

■■■ While the Statute of Frauds would prohibit evidence of a subsequent modification of the loan agreement, Appellants do not allege that they are entitled to relief because of a modification of the agreement. Rather, their entire argument on appeal is based on their claim

that the parties discussed a business plan *before* Appellants executed the notes. Appellants make numerous statements in their brief and in the pleadings filed with the trial court claiming that the business plan was agreed to before the notes were executed. In the affidavit filed with Appellants' suggestions in opposition to summary judgment, Brent Barber stated: "Prior to September 19, 2000, I discussed a multi-faceted business opportunity with individuals who were agents of Woodside Housing Resource Foundation, Inc .... and Pacific Carlton Development Corporation." In paragraph four of the affidavit, he declared: "The discussions led to Notes being executed by me in favor of Woodside and Pacific on September 19, 2000 with regard to one facet of the business plan." And in their brief, Appellants make the following claim: "Respondent made statements to appellant *at the time of the loan* indicating that appellant would be given time to rehab and sell the properties." (emphasis added).

■ Appellants allege nothing more than a prior or contemporaneous oral agreement. Such parole evidence is not admissible to vary the terms of an unambiguous, complete written contract. *See Bergmann v. Bergmann*, 740 S.W.2d 215, 216 (Mo.App. E.D.1987); *Warrenton Campus Shopping Ctr., Inc., v. Adolphus*, 787 S.W.2d 852, 855 (Mo.App. E.D.1990). "The parole evidence rule prohibits use of oral evidence to contradict or change the terms of a written, unambiguous and complete contract absent fraud, common mistake, accident or erroneous omission." *Warrenton Campus Shopping Ctr., Inc.*, 787 S.W.2d at 855. The rule prohibits evidence of contrary agreements made prior to or contemporaneously with the writing but does not prohibit evidence of agreements entered subsequent to the contract. *Id.* "[I]t is presumed that a written

contract embodies the entire agreement of the parties, and this is particularly so where it is a promissory note which is in dispute." *Bergmann*, 740 S.W.2d at 216.

All of the written documents evidencing the loan agreement directly contradict Appellants' claims. While Appellants assert that the parties engaged in lengthy discussions prior to the execution of the notes and agreed that payment would occur over time as properties were sold, the notes stated the following regarding repayment: "The principal and Interest due hereunder shall be repayable in full to Holder on October 19, 2000 (the "Maturity Date")."

Moreover, both the deed of trust and mortgage provide that Respondents would not release the deed of trust or mortgage until the notes were paid in full, contrary to Appellants' contention that proceeds from sale of the property were to be used to repay the notes. The mortgage, which secured property in Wyandotte County, Kansas, was signed by Appellants on September 19, 2000, and stated, *inter alia*, "Release. Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any." The deed of trust, which secured property in Jackson County, Missouri, and was signed by Appellants on September 19, 2000, stated, *inter alia*, "Release. Upon payment of all sums secured by this Deed of Trust, Lender shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any."

Despite evidence showing that the parties changed the maturity dates of the notes, Appellants allege they are entitled to relief because of a prior or contemporaneous agreement between the parties. The notes and security documents directly contradict Appellants' claims, and any evidence of discussions that occurred prior to

or contemporaneous with the execution of the notes is barred by the parole evidence rule. Respondents have demonstrated that the notes were executed, that Appellants have failed to pay, and that the notes are in default. Accordingly, there is no material fact in dispute and summary judgment in favor of Respondents was proper. Point denied.

The trial court's grant of summary judgment is affirmed.

All concur.