Richard FRAME, Appellant/Cross-Respondent,

v.

BOATMEN'S BANK OF CONCORD VILLAGE and Boatmen's National Bank of St. Louis, Respondents/Cross-Appellants.

Nos. 59534, 59571.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 11, 1992.

John G. Simon, St. Louis, for appellant/cross-respondent.

Joseph E. Martineau, Robert B. Hoemeke, Hrant Norsigian, Jr., St. Louis, for respondents/cross-appellants.

STEPHAN, Judge.

Appellant and cross-respondent Richard Frame initiated this action against Boatmen's Bank of Concord Village and Boatmen's National Bank of St. Louis based on his claim that Mark Murray, a vice-president at Boatmen's Concord, had made oral representations that it would lend him $1.6 million for the purchase of certain real estate.[1] The bank subsequently failed to make the loan and appellant was unable to complete the purchase. Appellant had originally filed a four count petition sounding in contract, fraud, prima facie tort and negligent misrepresentation upon which the circuit court entered summary judgment against Frame on all four counts. We reviewed the circuit court's decision in *Frame v. Boatmen's Bank of Concord Village*, 782 S.W.2d 117 (Mo.App.1989), where we reversed and remanded the dismissal of the negligent misrepresentation claim holding that whether appellant had reasonably relied upon the representation of the Boatmen's Concord loan officer that appellant would receive the loan was a genuine issue of material fact rendering summary judgment inappropriate. *Id.* at 123–24. We incorporate those facts without further reference here.

Upon remand of his negligent misrepresentation claim, Frame sought damages for the lost earnest money in the amount of $4,300. He also sought damages for loss of anticipated profits of over one million dollars, claiming that Boatmen's failure to make the loan to him prevented him from making certain future profits. The trial court granted Boatmen's motion for partial summary judgment on the issue of damages and, thus, precluded Frame from presenting evidence of, or seeking recovery for, lost profits. Pursuant to the jury's verdict, the trial court entered judgment

against Boatmen's for monetary damages of $4,300. Both parties appeal.

Boatmen's Concord and Boatmen's National state that the trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict. They have raised three issues in their cross-appeal. We address each in turn.

█ In their first point, Boatmen's Concord and Boatmen's National argue that Frame failed to make a submissible case of negligent misrepresentation because the alleged misstatement by Mark Murray that Boatmen's Concord would lend Frame money is not actionable as a negligent misrepresentation since the statement merely concerned an intention of future performance. Boatmen's argument is premised on its characterization that Frame's action for negligent misrepresentation sought damages because Boatmen's Concord had promised him if the property appraised at two million or more dollars, the bank would lend him 1.6 million dollars and that, despite such appraisal, Boatmen's Concord failed to make the loan. Frame's negligent misrepresentation claim, however, was not based merely on the bank's promise to lend him money in the future. His petition alleged that the bank's agent Mark Murray had made representations to Frame that they would finance his purchase of Concord Bowl; that these representations were false; that at the time the false representations were made, Mark Murray believed the representations to be accurate; and that Mark Murray failed to exercise reasonable care because (a) he did not transmit full and complete information regarding Frame's loan application, (b) he made certain representations to Frame that the bank would finance Frame's purchase of Concord Bowl despite Frame's not having supplied them all necessary information, (c) he did not ascertain the accuracy or truth of his representations to Frame and (d) he was negligent in phrasing the representations made to Frame. We accept Frame's conclusion that his claim was not based

---

1. We refer to Boatmen's Bank of Concord Village as "Boatmen's Concord", to Boatmen's National Bank of St. Louis as "Boatmen's National", and to the two banks collectively as "Boatmen's".

merely upon the bank's promise to lend him money in the future, but that the bank, through its loan officer Mark Murray, failed to exercise reasonable care in informing Frame of all the existing contingencies which were to be met before the loan could be made, particularly Murray's failure to tell Frame that the loan needed to be submitted to Boatmen's National for approval.

At trial Murray testified, as he did in his deposition, that he told Frame at their initial meeting that the loan required participation and board approval from Boatmen's National. Frame, however, testified Murray never told him of this requirement. His testimony was buttressed by that of Mr. Thompson, the president of another bank, who had accompanied Frame to this meeting. Thompson testified that Murray did not state that the loan amount was beyond the bank's limits or that participation by another bank was a prerequisite to the loan. Mr. Kennedy, the real estate agent for Frame in the prospective purchase, also testified that Murray never intimated that anyone other than Murray was involved in making the loan decision or that another bank would be involved in the loan. The foregoing evidence, despite the conflicting versions, provides a sufficient basis for the jury's apparent belief that Murray was negligent in communicating to Frame the requisite conditions for the loan. In *Frame v. Boatmen's Bank*, this court stated as follows:

> Here, Murray represented to appellant that the loan was contingent upon an appraisal of two million dollars or more. Despite Murray's affidavit to the contrary, appellant stated in his deposition that Murray failed to warn appellant that a second contingency, the approval by Boatmen's National of the loan amount, was also required. According to appellant, Murray essentially represented to appellant that he had unconditional authority to make all loans, when in fact he did not. Under the circumstances, we believe a genuine issue of fact exists as to whether Murray failed to exercise reasonable care and, as a result, supplied false information to appellant.

782 S.W.2d at 122. Our conclusion remains the same. Point one is denied.

Boatmen's second point asserts that the trial court's refusal to direct a verdict in Boatmen's favor or to grant judgment to Boatmen's notwithstanding the verdict was improper because Frame's evidence failed to establish the element of justifiable reliance to make a submissible case for negligent misrepresentation. Boatmen's highlights testimony that prior to Frame's decision to remove the financing contingency, Murray specifically told Frame's banker (Thompson) and Frame's real estate agent (Kennedy) that the loan remained contingent because it had not been approved and still had to be submitted to Boatmen's board of directors for approval. Boatmen's imputes the knowledge of Frame's real estate agent to Frame and emphasizes Frame's banker specifically relayed this information directly to Frame. Boatmen's further argues that Frame's own testimony established that he knew Murray, the loan officer at Boatmen's Bank, did not have sole authority to make the loan. Therefore, Frame's claim of his reliance on Murray's statement was not justifiable. Boatmen's also contends that Frame had no right to rely on any alleged oral loan committment because such oral committment is unenforceable under the Statute of Frauds.

This issue was addressed by this court in the earlier appeal of this case. *See Frame*, 782 S.W.2d at 123–24. We stated that the reasonableness of plaintiff's reliance is normally a matter for the jury's determination. *Id.* at 124. Here, the jury could reasonably believe Frame's testimony that the loan officer never told him that Boatmen's Concord could not make a loan of that size without participation, or that the loan officer needed to discuss the loan with Boatmen's National, or the loan officer needed to discuss the loan with the board at Boatmen's Concord. Frame testified that, prior to his removing the financing contingency, Mr. Murray assured him the loan would be made. Although Frame admitted that in past dealings with other banks he was aware that loans were normally "run by" a board of directors or loan board or executive committee, he understood that approv-

al to be pro forma: "Its always been my experience the people that I deal with, when they give you their committment they get it by the board and that's why I use the term 'run it by the board', not approved by the board." Frame added: "When he [Murray] said it's a done deal, as far as I knew he could have already been by the board." Frame denied that his banker had told him that the loan had to be run by the board. The foregoing evidence sufficiently supports a jury's finding that Frame's reliance upon Murray's representations was justifiable. Point denied.

Boatmen's third and final point attacks the submissibility of Frame's case on the ground that the failure of Boatmen's Concord to warn Frame of the necessity for participation by Boatmen's National in the loan and the requirement for its board approval of the loan does not constitute actionable negligence because the bank had no duty to inform Frame of such fact. Boatmen's correctly asserts that, in order to recover for negligent misrepresentation, a plaintiff must establish a legal duty on the part of defendant to supply correct information to plaintiff. Boatmen's further cites *Centerre Bank of Kansas City, N.A. v. Distributors, Inc.*, 705 S.W.2d 42, 53 (Mo.App.1985), for the proposition that Boatmen's had no duty to disclose the inner workings of its loan process to Frame.

In *Centerre Bank*, the bank held a demand note for the defendant corporation, Distributors, Inc. Guarantors of the note, prior to purchasing a majority of stock shares in the corporation, asked the bank whether it would continue to extend credit to the corporation. 705 S.W.2d at 45. The bank did not disclose that it had classified the note as a problem note with a high probability of loss to the bank. *Id.* The guarantors subsequently submitted personal guarantees on the note, after which the bank immediately called the bank note. Unable to pay, the guarantors surrendered the corporation's assets to the bank. *Id.* at 46. The Western District held that there was no confidential or fiduciary relationship between the bank and the guarantors of the note nor was there any duty on the

part of the bank to disclose to the guarantors of the note its internal classification of the note's status. *Id.* at 53. In reaching this conclusion, the court emphasized that one of the guarantors had managed the business of the corporation prior to his signing the agreement to act as guarantor. *Id.* The court reasoned that the guarantors could not contend that they were looking to the bank for information concerning the corporation's financial well-being because the only data the bank processed concerning the corporation's financial picture was supplied to it from one of the guarantors. *Id.*

Based on *Centerre Bank*, Boatmen's argues that the instant case presents an even stronger argument for finding no duty to disclose because Frame was merely a *potential* loan customer as opposed to an existing loan customer as in *Centerre Bank*. We disagree.

Generally speaking, commentators have noted that the relationship between borrower and lender is a debtor-creditor, not a fiduciary relationship. *See e.g.*, 59 UMKC L.Rev. 207, 217 (1991); 54 Mo. L.Rev. 1009, 1025 (1989); 34 J.Mo.Bar 406 (Sept.1978). In Missouri, the Western District has expressly stated that there is no confidential or fiduciary relationship between a bank and a customer borrowing funds. *Centerre Bank of Kansas City, N.A. v. Distributors, Inc.*, 705 S.W.2d at 53. We recently echoed this holding in *Lemay Bank & Trust Co. v. Harper*, 810 S.W.2d 690, 693 (Mo.App.1991).

*Centerre Bank* does demonstrate that a lender generally does not have an affirmative duty to disclose material information to a borrower. However, sometimes an obligation to speak may arise, otherwise a lender may be guilty of negligent misrepresentation. Restatement (Second) of Torts, Section 552 (1977) recognizes that liability may attach for negligent misstatements of fact. Once a lender assumes the responsibility of providing information, a duty to use due care in providing such information may exist. Whether a duty arises is based on the particular facts of the case. For example, in *Pigg v. Robert-*

*son,* 549 S.W.2d 597 (Mo.App.1977), the plaintiff, a prospective borrower, went to his bank to borrow money to buy a farm. *Id.* at 598. The usual loan officer was not there, and a bank employee directed him to defendant instead. *Id.* Believing defendant to be a loan officer, plaintiff told him of his intentions. Defendant informed plaintiff that his collateral of certain notes was not acceptable and that he would have to speak to the regular loan officer when he returned. *Id.* at 599. Later, when plaintiff attempted to buy the farm, he learned defendant had purchased it the day after plaintiff had applied for the loan at the bank. *Id.* Unknown to plaintiff, defendant was not an employee of the bank, but, rather, vice-president of an investment company, and was merely in the bank in connection with an operational audit. *Id.*

The court acknowledged that the relationship between a general depositor and his bank is that of creditor-debtor, not a fiduciary relation, but that the relation may give rise to some particular obligation, such as an obligation upon the bank not to disclose matters pertaining to the customer's account without his consent. *Id.* at 600. The court reasoned there was sufficient evidence to permit a jury to find that plaintiff had placed his trust in defendant when he approached defendant to discuss the possibility of a loan, and that plaintiff had the right to believe that defendant, an apparent bank employee, would keep his disclosure confidential. *Id.* at 601–02. The court stressed that defendant was aware he was being called upon to provide advice for customers. *Id.* at 601. Based on the foregoing, the court held that the evidence supported the jury's determination that a confidential relation did exist between plaintiff and defendant. *Id.*

*Pigg* was an action for breach of fiduciary duty and not, as here, for negligent misrepresentation. That distinction makes little difference in this case. Both actions sounded in tort based on defendant's negligent communication. In *Pigg,* the evidence established that defendant knew he was being called upon to advise customers and in so doing, he assumed a duty which he subsequently breached in not openly disclosing his personal interest in purchasing the property. *Id.* It has been said elsewhere that "the Restatement [ (Second) of Torts Section 552] realistically recognizes that businessmen who justifiably rely on the advice and expertise of other businessmen, holding themselves out in the community as possessing unique skills, are entitled to expect that one possessing skill will exercise it with due care in the course of his business relationships." *First National Bank, Henrietta v. Small Business Administration,* 429 F.2d 280, 287 (5th Cir. 1970). We are persuaded that the evidence in this case supports a jury's finding that where Boatmen's knew that Frame was relying on its professional judgment in a business relationship when Frame approached the bank for a loan, Boatmen's, through its loan officer Mark Murray, had a duty to use due care in providing information and advice to Frame concerning his loan application. *See also Frame v. Boatmen's Bank of Concord Village,* 782 S.W.2d at 122–23. Point denied.

■ We next address the sole contention raised by Frame in his appeal. Frame contends the trial court erred in granting Boatmen's motion for partial summary judgment which precluded him from presenting evidence of, and recovering for, his lost profits. At trial Frame sought to introduce not only evidence of loss of future profits that he would have realized from operation of the bowling alley had he received the loan to buy the property, but also evidence of the difference between the appraised value and contract price of the property for which he sought financing, as well as evidence of another corporation's lease commitment for a portion of the property Frame intended to purchase with the loan proceeds. The only expense recovered by Frame in the jury's award was the pecuniary loss of his $4,300 earnest money deposit paid to the prospective seller. Boatmen's responds that while out-of-pocket losses are recoverable for negligent misrepresentation, loss of future anticipated profits is not. We agree.

Restatement (Second) of Torts Section 552B, (1977), entitled "Damages for Negligent Misrepresentation," provides:

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) the damages recoverable for a negligent misrepresentation *do not include the benefit of the plaintiff's contract with the defendant.* (Emphasis ours.)

Frame argues first that this section, relied on by the trial court, is inapplicable because the limiting language of this section refers to a general or direct measure of damages in situations involving the transfer of an item of property and does not pertain to recovery of other special or consequential damages that he could have proved. The second prong of his argument asserts Missouri law does not follow Section 552B of the Restatement because case law dictates that loss of anticipated profits is recoverable as damages for negligent misrepresentation.

Frame urges acceptance of the Restatement to support the basic elements of his cause of action for negligent misrepresentation. However, he rejects any limitation of damage to pecuniary loss alone. Frame strongly advocates his entitlement to anticipated lost profits.

Restatement (Second) of Torts Section 552B specifically allows for damages suffered in reliance upon negligent misrepresentation, but not for the failure to obtain the benefit of the bargain. The reason Frame did not receive anticipated profits or rental income from any leasehold interest is because the bank never extended the loan. If the bank had agreed, in fact, to lend Frame the money, he would be entitled to recover the benefit of his bargain, the remedy afforded for breach of contract. Frame's claims for damages other than the earnest money goes beyond the damages he incurred in reliance upon the loan officer's negligent misrepresentation. He asks that we place him in the position he would have been in had the bank, in fact, made a contractual agreement with him to finance his real estate purchase.

While benefit-of-the-bargain damages are available for fraudulent misrepresentation, the Restatement propounds several policy reasons for limiting damage for a negligent misrepresentation. The liability for negligent misrepresentation is more restricted than for outright deceit because negligent misrepresentation has a lower degree of fault indicated by a less culpable mental state and because of the need to keep liability proportional to risk. *See* Restatement (Second) of Torts Section 552 comment a (1977).

Comment b of Restatement (Second) of Torts Section 552B (1977) recognizes that plaintiff's recovery for the loss of his bargain as his damages for fraudulent misrepresentation is permitted in order to make the deception of a deliberate defrauder unprofitable to the defrauder; however, these "considerations of policy ... do not apply when the defendant has had honest intentions but has merely failed to exercise reasonable care in what he says or does." Comment b also notes that this position is consistent with that taken elsewhere in the Restatements that, as a general rule, there is "no liability for merely negligent conduct that interferes with or frustrates a contract interest or an expectancy of pecuniary advantage." *Id.*

A number of courts have adopted, or cited with approval, the standard for damages for negligent misrepresentation contained in Section 552B of the Restatement.[2]

---

**2.** *See e.g. Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 826 F.2d 424, 432–33 (5th Cir.1987); *Cunha v. Ward Foods, Inc.,* 804 F.2d 1418, 1423–26 [10] (9th Cir.1986); *In re Letterman Brothers Energy Securities Litigation,* 799 F.2d 967, 974–75 [10] (5th Cir.1986); *Rosales v. AT & T Information Systems, Inc.,* 702 F.Supp. 1489, 1501 (D.Colo.1988); *Browne v. Maxfield,* 663 F.Supp.

From these cases we discern no trend to reject the pecuniary loss rule in what is essentially a commercial tort. Here the parties are essentially on the same footing with the same degree of sophistication in a commercial setting. We see no need to expand the damages allowed for negligent misrepresentation beyond those delineated in the Restatement and thus allow recovery for consequential damages. Accordingly, we deny Frame's single point on appeal.

Having found no merit either to Frame's appeal or to Boatmen's cross-appeal, we affirm the judgment of the trial court.

PUDLOWSKI, P.J., and CRIST, J., concur.

1193, 1207 (E.D.Pa.1987); *Torres v. Borzelleca,* 641 F.Supp. 542, 545–47 (E.D.Pa.1986); *Gale v. Value Line, Inc.,* 640 F.Supp. 967, 971–72 [7] (D.R.I.1986); *Silver v. Nelson,* 610 F.Supp. 505, 522–23 (E.D.La.1985); *Robinson v. Poudre Valley Federal Credit Union,* 654 P.2d 861, 863 (Colo.Ct.App.1982); *Shaffer v. Earl Thacker Co.,* 6 Hawaii App. 188, 716 P.2d 163, 165–66 (1986); *Danca v. Taunton Savings Bank,* 385 Mass. 1, 9, 429 N.E.2d 1129, 1134 (1982); *Crowley v. Global Realty, Inc.,* 124 N.H. 814, 474 A.2d 1056, 1058 (1984); *First Interstate Bank of Gallup v. Foutz,* 107 N.M. 749, 764 P.2d 1307, 1309 [2] (1988); *Onita Pacific Corp. v. Trustees of Bronson,* 104 Or.App. 696, 803 P.2d 756, 762–65 [4] (1990); *Duyck v. Tualatin Valley Irrigation District,* 80 Or.App. 602, 610, 723 P.2d 1043, 1048 (1986).