# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3534

_____

Stephen C. Jenkins,                     *
                                        *
       Appellant,                    *
                                        *
                                        *    Appeal from the United States
   v.                                   *    District Court for the
                                        *    Western District of Missouri.
KLT, Inc.; KLT Gas, Inc.,               *
                                        *
       Appellees.                    *

_____

Submitted:  November 14, 2001

Filed: October 15, 2002 (Corrected: October 31, 2002)

_____

Before BOWMAN, JOHN R. GIBSON, and STAHL,[1] Circuit Judges.

_____

BOWMAN, Circuit Judge.

Stephen C. Jenkins sued his former employer, KLT, Inc. (KLT), a wholly-owned subsidiary of Kansas City Power and Light (KCPL), for breach of contract and negligent misrepresentation.  Jenkins's breach-of-contract claims alleged that KLT failed to complete payments owed to him from two incentive plans and a severance agreement.  Jenkins also claimed that KLT negligently misrepresented to him the

_____

[1]The Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

length of time that certain severance benefits would continue and the extent of the opportunity he would have to perform under one of the incentive plans. After a bench trial, the District Court[2] entered judgment in favor of KLT on the breach of contract claims and later entered summary judgment in favor of KLT on the negligent misrepresentation claim. We affirm.

I.

KLT hired Stephen Jenkins in 1995 to be President of KLT Power Inc., a wholly-owned subsidiary of KLT. Jenkins served in that capacity until July 1998, when KLT sold KLT Power. After the sale, KLT initially transferred Jenkins to another subsidiary, but, on July 30, 1998, KLT notified Jenkins that his employment would be terminated in ninety days.

KLT was obligated to compensate Jenkins under two agreements: (1) Jenkins's employment contract, which included incentive awards, and (2) Jenkins's severance agreement.

Jenkins's Employment Contract

Jenkins's at-will employment contract provided for a base salary and two incentive plans. The first incentive plan was an annual incentive plan, while the second was a long-term incentive plan. Under the annual incentive plan, Jenkins could earn up to forty percent of his base salary. In addition, the annual incentive plan was amended in 1997 to include a Project Incentive Plan (PI Plan), under which Jenkins could earn an award for achieving certain milestones related to independent power projects. Under the Long-Term Incentive Plan (LTI Plan), Jenkins could earn

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

an award based on achievements over a three-year period beginning in fiscal year 1995.

KLT paid Jenkins pursuant to these plans, including an annual incentive award for his termination year, 1998. Jenkins, however, disputes the amounts KLT owed him under these plans. The thrust of his argument is that KLT, in selling KLT Power and terminating him, prevented him from maximizing his incentive awards.

Jenkins's Severance Agreement

In addition to the incentive award agreements, Jenkins and KLT entered into a severance agreement under which KLT agreed to pay Jenkins two cash awards, to continue Jenkins's insurance coverage for two years after his termination, and to pay his legal fees in certain situations. Jenkins brings claims regarding each component.

The first cash award, laid out in paragraph 3(a)(1)(ii), was to be "a bonus in an amount at least equal to the average annualized annual incentive compensation awards and average annual long-term incentive awards paid or payable," over a set period of time prior to the fiscal year in which KLT terminated Jenkins, "to the extent not theretofore paid." (Br. of Appellant at App. 43-44.) The second cash award, laid out in paragraph 3(a)(2)(ii), was to be the sum of (a) two times Jenkins's highest annual base salary during the twelve-month period before his termination, plus (b) two times Jenkins's average annualized incentive compensation awards and average long-term incentive awards during the period of time used to calculate the award in paragraph 3(a)(1)(ii).

KLT paid Jenkins pursuant to the severance agreement, but Jenkins believes that KLT wrongly calculated both cash awards. First, he argues that KLT used the wrong time period to calculate the awards. Second, he argues that the cash award under 3(a)(2)(ii) is distinct from the 1998 incentive award that KLT already paid.

Third, because he believes KLT incorrectly calculated the annual incentive awards and the long-term incentive awards, he contends that the severance awards are necessarily incorrect.

Jenkins also contends that KLT's post-termination medical and disability coverage is less than his pre-termination coverage and that KLT owes him legal fees pursuant to the severance agreement.

## II.

We begin by reviewing Jenkins's breach-of-contract claims, first examining those related to the employment contract, and then moving on to the severance agreement claims. The District Court determined that Jenkins's contract claims raised issues of contract construction that were solely questions of law and that the governing contracts were unambiguous. We review de novo a district court's conclusion that a contract is not ambiguous. See Farmland Indus., Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 590 (8th Cir. 1997) (standard of review).

## A.

Jenkins claims that KLT did not fulfill its obligations under the incentive agreements related to his employment contract. According to Jenkins, KLT prevented Jenkins from earning an incentive award by selling KLT Power and by terminating him. Because the employment agreement was at-will and because the agreement contained no implied guarantee that Jenkins could maximize his incentive awards, we rule in KLT's favor.

Long-Term Incentive Plan

Under the LTI Plan, KLT would compensate Jenkins when Jenkins achieved certain goals over a three-year period. The LTI Plan's terms were set forth in two integrated documents: a letter dated August 16, 1995, (Br. of Appellant at Addendum C-1), and a document entitled "1996-1998 KLT Power Inc. Long-Term Incentive Pay Goals for President." (Id. at Addendum D-3.) The LTI Plan proposed the payment of "a bonus of up to 200% of the maximum annual incentive amount with a target centered on 100% of annual incentive, payable in cash at the end of 1998." (Id. at Addendum C-1.) Eleven specific performance goals, each worth a various amount of "points," determined the final amount paid under the LTI Plan. (Id. at Addendum D-3, D-4.) Jenkins earned fifty-five of a possible total of two hundred points. (Br. of Appellee at 6.)

Upon Jenkins's termination of employment, KLT properly paid Jenkins $112,401 under the LTI Plan based on Jenkins's annual incentive awards and points earned. Jenkins concedes that $112,401 was the correct amount due given the goals that he actually achieved. (Br. of Appellant at 19.) He argues, however, that KLT must compensate him for the goals he could have hypothetically met but did not meet. His rationale is that KLT prevented him from achieving these goals by selling KLT Power and by terminating him, thereby violating an implied promise by KLT that it would not prevent Jenkins from reaching the goals.

Despite Jenkins's desire to maximize his incentive awards, the LTI Plan is unambiguous: it contains conditions that Jenkins must perform to receive payment. In order to enforce a promise based upon a condition, the contingency upon which the promise depends must have occurred. Lowery v. Air Support Int'l, Inc., 982 S.W.2d 326, 329 (Mo. Ct. App. 1998). The LTI Plan spells out precisely the goals that Jenkins must have achieved in order to receive compensation. Furthermore, there are no provisions for payment should Jenkins not reach the goals because of termination

of his employment, and KLT had the right to terminate Jenkins's employment because his contract was at-will. See Luethans v. Washington Univ., 894 S.W.2d 169, 172 (Mo. 1995) (holding that employment contract without duration is at-will and terminable by either party at any time). Given that KLT had the right to fire Jenkins without cause, KLT had no obligation to alter its business strategy in order for Jenkins to be able to maximize his incentive awards.

Jenkins acknowledges he has been paid in full for the LTI Plan's goals that he actually achieved. The District Court did not err in concluding that KLT has paid Jenkins properly under the plan.

Annual Incentive Plan: the Project Incentive Plan

Under the PI Plan, which amended the annual incentive plan in 1997, KLT would compensate Jenkins when two "milestone" events occurred concerning the establishment of an independent power project: (1) the execution of a power plant purchase agreement, and (2) the financial closing of the power project. Jenkins argues that he could not achieve either milestone event because of the sale of KLT Power and the subsequent termination of his employment.

Our analysis with respect to the PI Plan parallels that of the LTI Plan. The agreement plainly laid out conditions precedent to payment, and it contained no provisions for payment if the conditions were not fulfilled. Jenkins was an employee at will, and KLT was free to terminate his employment or alter its course of business without ensuring Jenkins an opportunity to maximize his awards. Because Jenkins did not reach the milestone events, KLT owed Jenkins nothing under the PI Plan.

B.

Jenkins next argues that KLT failed to pay him the proper amount of severance compensation. Specifically, he urges that KLT based its bonus calculations on the wrong time period and misclassified one of his payments. We discuss each of his claims in turn.

The Appropriate Time Period

Jenkins first argues that the time period that determines KLT's obligation under the severance agreement should include KLT's 1998 fiscal year. KLT did not include the 1998 fiscal year in its calculations. The agreement's disputed language, found identically in paragraphs 3(a)(1)(ii) and 3(a)(2)(ii), directs KLT to pay Jenkins based on incentive awards he received:

> . . . during the five fiscal years of the company (*or if Executive shall have performed services for the Company and its affiliated companies for four fiscal years or less, the years during which Executive performed services*) immediately preceding the fiscal year in which the Change of Control occurs . . .

(Br. of Appellant at App. 44-45) (emphasis added).

Without the italicized parenthetical, this clause states that KLT's payment will be determined by incentive awards made during the five fiscal years that immediately preceded the fiscal year in which the Change of Control occurred. The Change in Control here (Jenkins's termination of employment) occurred in 1998. The fiscal years for determining the average awards would therefore be 1993, 1994, 1995, 1996, and 1997. The italicized parenthetical addresses the situation where KLT employed Jenkins for less than five years before termination. That is exactly what happened in this case. Jenkins did not begin his employment at KLT until 1995, so the

appropriate years for determining his severance award would be 1995, 1996, and 1997.

Jenkins, however, argues that the words "immediately preceding the fiscal year in which the Change of Control occurs" do not apply to the parenthetical. Under this construction, because Jenkins worked four fiscal years or less, the appropriate years for calculating the severance award would be every fiscal year of Jenkins's employment, including 1998, the fiscal year of the Change of Control.

Jenkins's construction, however, creates an ambiguity that does not exist. First, if the parties intended such a reading, the parenthetical would have been placed after the clause that says "immediately preceding the fiscal year in which the Change of Control occurs." That construction would distinguish the parenthetical from the rest of the sentence and make it a separate idea.

Second, no plausible reason exists for Jenkins's reading. Jenkins's strongest argument is that if he had worked less than one year when a change of control occurred and if the District Court's reading applied, he would have received no award, and such a result could not have been intended. Yet it is not hard to imagine that KLT would deny Jenkins a severance award in those circumstances because he would have performed limited services.

We agree with the District Court that the clause is unambiguous and that Jenkins is not entitled to have any part of the 1998 fiscal year included in the computation of his severance pay. Instead, 1995, 1996, and 1997 are the years that control the amount of his severance award.

No Additional Bonus

Next, Jenkins contends that KLT owes him an additional bonus under paragraph 3(a)(1)(ii). Using fiscal years 1995, 1996, and 1997 to determine the average awards, Jenkins was owed $43,834 pursuant to 3(a)(1)(ii). KLT paid Jenkins a $62,366 incentive award for the portion of fiscal year 1998 that Jenkins worked. Jenkins argues that this annual incentive award is distinct from the payment due under 3(a)(1)(ii), which is labeled as a "bonus" (Br. of Appellant at App. 43) and not an "award." No matter the label given to the 3(a)(1)(ii) payment, however, the severance agreement states that this amount is due only "to the extent not theretofore paid." This phrase can only refer to the possibility of KLT paying Jenkins incentive awards before a severance award; there is no other award that KLT would have paid Jenkins. In this case, KLT paid the $43,834 in full when it paid Jenkins $62,366 in incentive award, and it has therefore fulfilled its obligation under 3(a)(1)(ii).

Jenkins also argues that KLT underpaid its 3(a)(2)(ii) obligation. To the extent this argument is based on Jenkins's claim that 1998 should be included in the award calculations or is otherwise premised on arguments we already have rejected, we find the argument meritless. To the extent it is based on a distinction between a "bonus" and an "award," the argument fails because the severance agreement recognizes no such distinction. The District Court correctly determined that KLT owed Jenkins $87,686 under paragraph 3(a)(2)(ii) and that KLT has fulfilled this obligation.

No Obligation to Maximize Severance Award

Jenkins also asserts that he was unable to maximize his severance award because he could not maximize his incentive awards due to the sale of KLT Power and the termination of his employment. Because we have rejected Jenkins's argument concerning KLT's alleged duty to give him time to maximize the incentive awards, we necessarily reject the same argument concerning the severance agreement.

C.

The severance agreement requires KLT to provide Jenkins, after termination of his employment, with two years of the same level of medical, accident, disability, and life insurance coverage that he received while employed by KLT. The parties dispute whether KLT has fulfilled its obligation with respect to medical and disability insurance.

To fulfill the medical insurance obligation, KLT provided Jenkins with COBRA insurance coverage, see Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 222 (codified as amended in scattered sections of 26, 29, and 42 U.S.C.), for eighteen months and Blue Cross/Blue Shield coverage for six more months. Jenkins maintains that the coverage KLT provided is not identical to his pre-discharge coverage, but the record indicates otherwise. KLT provided COBRA coverage, identical with Jenkins's prior coverage, for eighteen months, the maximum length of COBRA coverage that is permitted by law. See 26 C.F.R. § 54.4980B (1999) (explaining that after a "qualifying event," such as termination of employment, see § 54.4980B-4, COBRA coverage may only be extended for eighteen months pursuant to § 54.4980B-7). To the extent the Blue Cross/Blue Shield coverage falls short of Jenkins's pre-discharge COBRA coverage, KLT has agreed to pay any additional costs Jenkins may incur. KLT has therefore satisfied its obligation to provide two years of continued health insurance.

As for disability insurance, Jenkins points out that, during his employment, KLT provided him with disability insurance for 66.67% of his "base pay," which was his monthly salary of $15,600, but KLT's post-termination coverage was only $2,500 per month. We believe this is a moot point, inasmuch as two years have passed, KLT is no longer under any obligation to provide disability insurance, and the record does not suggest that Jenkins ever made a claim for payments under the disability coverage KLT provided. We therefore do not address this claim any further.

-10-

D.

We are unpersuaded by Jenkins's argument that KLT owes him attorney fees under the severance agreement.  The severance agreement, in pertinent part, reads as follows:

> If any contest or dispute shall arise under this Agreement involving termination of Executive's employment with the Company or involving the failure or refusal of the Company to perform fully in accordance with the terms hereof, the Company shall reimburse Executive, on a current basis, for all legal fees and expenses, if any incurred by Executive in connection with such contest or dispute ... provided, however, that in the event the resolution of any such contest or dispute includes a finding denying, in total, Executive's claims in such contest or dispute, Executive shall be required to reimburse the Company ... for all sums advanced to Executive pursuant to this Section [].

(Br.  of Appellant at App. 49-50)  (emphasis in original).

The resolution of this dispute includes a finding that denies, in total, Jenkins's claims.  Had KLT advanced any attorney fees to Jenkins in connection with the dispute, Jenkins would have been required to reimburse KLT.  KLT, therefore, cannot possibly owe Jenkins any attorney fees, and we agree with the District Court that KLT has satisfied its obligation concerning attorney fees.[3]

---

[3]There appears to be some ambiguity concerning the attorney fees provision because KLT paid Jenkins's legal bills until the time that all amounts due to him under the severance agreement were paid.  KLT could argue that Jenkins should reimburse KLT for these legal fees, even though KLT paid the fees before Jenkins initiated his lawsuit, because they are "in connection with" the dispute inasmuch as they concern Jenkins's compensation pursuant to the severance agreement.  Were such an argument made by KLT, Jenkins might counterargue that the provision

-11-

III.

We now turn to Jenkins's argument that the District Court erred in granting summary judgment in KLT's favor on Jenkins's claim of negligent misrepresentation. "We review a district court's grant of summary judgment de novo." McGee v. Broz, 251 F.3d 750, 752 (8th Cir. 2001).

Jenkins claims there are fact issues as to whether KLT misrepresented his opportunity to perform certain aspects of the incentive plan and regarding the size of his severance benefits. In effect, Jenkins reiterates certain aspects of his contract claims: that he was entitled to more time to perform under the LTI Plan and that he was denied appropriate severance benefits under the severance agreement.

The issue here is distinguishing reliance damages, which Jenkins can seek, from benefit-of-the-bargain damages, which Missouri law precludes Jenkins from seeking as a remedy for negligent misrepresentation. Missouri follows the pecuniary loss rule, which states that "the damages recoverable for a negligent misrepresentation *do not include the benefit of the plaintiff's contract with the defendant*." Restatement (Second) of Torts § 552B (1977), quoted in Frame v. Boatmen's Bank of Concord Vill., 824 S.W.2d 491, 496 (Mo. Ct. App. 1992) (emphasis added). The rationale is that there should be no liability in tort merely for negligent conduct by the promisor that interferes with or frustrates the promisee's pecuniary expectancy arising from the contract. A promisee can only recover damages for pecuniary loss incurred in reasonable reliance on a misrepresentation negligently made by the promisor. See Hartford Accident & Indem. Co. v. Contico Int'l, 901 S.W.2d 210, 212-13 (Mo. Ct. App. 1995). To recover benefit-of-the-

operates as a penalty to him for bringing suit. KLT, however, does not seek reimbursement for these legal fees, so we have no occasion to address the hypothesized penalty issue.

-12-

bargain damages, Jenkins would have had to prove fraudulent misrepresentation. Frame, 824 S.W.2d at 496.

In this case, the incentive and severance awards that Jenkins seeks are the benefits of his bargain with KLT. If Jenkins achieved certain goals, KLT promised the awards as a benefit. Jenkins does not allege any reliance damages, i.e., he does not allege any pecuniary loss incurred through his reliance on the alleged negligent representation.

Because Missouri law bars Jenkins from recovering the benefit-of-the-bargain damages he seeks for the alleged negligent misrepresentation, we affirm the District Court's grant of summary judgment.

## VI.

For the reasons stated, the judgment of the District Court is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.