313 F.Supp.2d 1026 (2004)
Craig BISHOP, Plaintiff,
v.
NU-WAY SERVICE STATIONS, INC., d/b/a Nu-Way Service, Inc., Defendant.
No. 4:02CV1814 JCH.
United States District Court, E.D. Missouri, Eastern Division.
March 16, 2004.
*1027 Kathryn E. Denner, John D. Lynn, Denner and Lynn, St. Louis, MO, for Plaintiff.
Corey L. Franklin, James N. Foster, Jr., McMahon and Berger, St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court on Defendant's Motion for Summary Judgment, filed November 10, 2003, and Plaintiff's Cross-Motion for Partial Summary Judgment, filed December 1, 2003. (Doc. Nos. 25, 28). Both motions are fully briefed and ready for disposition.

BACKGROUND
Plaintiff began working for Defendant as a mechanic in September, 1998. (First Amended Compl., ¶ 5). Plaintiff worked on the night shift. (Id.). As a condition of Plaintiff's employment with Defendant, Plaintiff became a member of Teamsters Local 618. (Defendant's Statement of Uncontroverted Material Facts ("Defendant's Facts"), ¶ 2, citing Plaintiff's Dep., P. 19). Pursuant to its collective bargaining agreement ("CBA"), Teamsters Local 618 acted as the sole bargaining agent for employees under its jurisdiction. (Defendant's Facts, ¶ 3, citing Defendant's Exh. A, Collective Bargaining Agreement). Article V of the CBA stated in relevant part as follows:
For purposes of this Agreement, a grievance is defined as any dispute, claim or complaint involving the interpretation or application of the provisions of this Agreement, not settled through the procedure set out in Section 1 and taken up in the grievance procedure outlined below. Said grievance also includes any claim under state substantive law or federal law, including but not limited to claims of unlawful discharge, claims of unlawful treatment based upon any one or combination of the factors prohibited by applicable state or federal law, including but not limited to claims of discrimination on the basis that the employees have availed themselves to workers' compensation rights, service letter claims, claims made pursuant to the Employee Retirement Income Security Act and its amendments, and/or any and all other claims under federal, state or local law, or by way of arbitration. All such grievances or claims shall be settled and determined exclusively by the grievance procedure.
(Defendant's Exh. A, P. 17).
In August, 2000, Plaintiff was diagnosed with multiple sclerosis. (Defendant's Facts, ¶ 14, citing Plaintiff's Dep., PP. 52-53). As a result, Plaintiff was placed on disability leave from August, 2000 through October 19, 2000. (Id., ¶ 15).
On October 17, 2000, Defendant sent a letter to Plaintiff, requesting that he provide paperwork setting forth his ability to perform the work required for his position. (Defendant's Facts, ¶ 19, citing Defendant's Exh. C). The letter further indicated that if Defendant failed to receive paperwork *1028 regarding Plaintiff's condition within five working days, Defendant would assume Plaintiff had resigned his position with Defendant. (Id., ¶ 20, citing Defendant's Exh. C). On October 19, 2000, Plaintiff's neurologist, Dr. Ahmed H. Jafri, issued a release for Plaintiff's return to work with restrictions. (Id., ¶ 16, citing Defendant's Exh. B). Specifically, Plaintiff's release required that Plaintiff be permitted to work during daylight hours, i.e., the morning shift, and that Plaintiff be restricted from performing strenuous work. (Id., ¶ 17, citing Defendant's Exh. B).
On October 23, 2000, Defendant sent Plaintiff a letter indicating it had neither day nor night openings that could accommodate the restrictions placed by Dr. Jafri. (Defendant's Facts, ¶ 21, citing Defendant's Exh. D).[1] The letter directed Plaintiff to return to his normal shift without restriction, or to resign his position. (Id., ¶ 22, citing Defendant's Exh. D).
On or about October 31, 2000, Plaintiff met with company representative Mariano Costello ("Costello") and Union Shop Steward Greg Maschmeyer ("Maschmeyer"), to discuss his ability to return to work. (Defendant's Facts, ¶ 23, citing Plaintiff's Dep., PP. 67-68). On November 2, 2000, Defendant sent Plaintiff another letter, again stating there were neither day nor night openings for work requiring little or no heavy lifting. (Id., ¶ 24, citing Defendant's Exh. E). In the letter, Defendant asked that Plaintiff resign his position as a mechanic. (Id., ¶ 25, citing Defendant's Exh. E).
On November 30, 2000, Plaintiff filed a written grievance regarding Defendant's refusal to assign him a mechanic's position on the day shift. (Defendant's Facts, ¶ 26, citing Defendant's Exh. F). Shop Steward Maschmeyer signed the written grievance, and submitted it to Teamsters Local 618's President, Robert Miller ("Miller"), for processing. (Id., ¶ 27, citing Defendant's Exh. F).
On December 18, 2000, a meeting was held in an effort to resolve Plaintiff's grievance regarding his desire to return to work as a mechanic. (Defendant's Facts, ¶ 28, citing Defendant's Exh. F; Plaintiff's Dep., PP. 75-77). The meeting was attended by Teamsters Local 618 President Miller, Shop Steward Maschmeyer, company representative Costello, and Plaintiff. (Id., ¶ 29, citing Defendant's Exh. I; Plaintiff's Dep., PP. 82-83). Eventually, Costello and Miller asked Maschmeyer and Plaintiff to leave the meeting, while they contacted Defendant's owner, Don Costello, Sr., in an effort to facilitate a settlement of the grievance. (Id., ¶ 30, citing Plaintiff's Dep., PP. 91-93).
Following the closed meeting, Plaintiff drafted an Agreement dated December 18, 2000, which stated in its entirety as follows:
I Craig T. Bishop agree to resign my position as a mechanic at Nu-Way Services with the provision that Nu-Way pay my health & welfare benefits through July 2001. In addition Nu-Way will pay me the sum of $5,000.00 before Jan. 7, 2001[2] as severance pay. I further agree that after all monies & benefits are paid I agree that I will not hold Nu-Way Services liable for any further financial obligations.
(Defendant's Exh. G). The settlement agreement was signed by Plaintiff and *1029 company representative Costello, and witnessed by Union President Miller and Union Shop Steward Maschmeyer. (Id.).
Plaintiff initially did not receive health and welfare benefits for January, 2001, but eventually the benefits were retroactively reinstated. (Defendant's Facts, ¶ 44, citing Defendant's Exhs. I-N; Plaintiff's Dep., PP. 144-45, 151-52). Plaintiff did not, however, receive his severance benefits in January, 2001. (First Amended Compl., ¶ 32). Instead, Plaintiff's $5,000.00 severance check was sent via certified mail in March, 2001. (Defendant's Facts, ¶¶ 45, 47, citing Plaintiff's Dep., P. 150).[3] Upon receiving the severance pay, Plaintiff turned the check over to his retained attorney, who made a copy and returned the original to Defendant. (Id., ¶ 48, citing Plaintiff's Dep., PP. 147-50; First Amended Compl., ¶ 34). Plaintiff continued to accept the payment of health and welfare benefits on his behalf through July, 2001. (Id., ¶ 49, citing Plaintiff's Dep., PP. 144-45, 151-52; Defendant's Exhs. I-N).
Plaintiff filed his First Amended Complaint in this matter on October 22, 2003. (Doc. No. 24). In his First Amended Complaint, Plaintiff levels charges of failure to make reasonable accommodations, in violation of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq., and the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. § 213.010 et seq. (Counts I and II); wrongful termination, in violation of both the ADA and the MHRA (Counts III and IV); and equitable rescission (Count V). (Id.). As stated above, Defendant filed the instant Motion for Summary Judgment on November 10, 2003, asserting that Plaintiff's claims are barred by the doctrines of settlement, release, accord and satisfaction. (Doc. No. 25). Plaintiff filed his Cross-Motion for Partial Summary Judgment on December 1, 2003. (Doc. No. 28).

SUMMARY JUDGMENT STANDARD
The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. 2505. The nonmoving party may not rest upon mere allegations or denials *1030 of his pleading. Anderson, 477 U.S. at 256, 106 S.Ct. 2505.
In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255, 106 S.Ct. 2505. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249, 106 S.Ct. 2505.

DISCUSSION

I. Did Plaintiff Waive His Right To Assert Statutory Claims Against Defendant In Federal Court, When He Entered Into The December 18, 2000 Grievance Settlement?

In its Motion for Summary Judgment, Defendant first asserts Plaintiff's claims are barred by his signed agreement to release Defendant from all future liability. (Defendant's Memorandum in Support of its Motion for Summary Judgment ("Defendant's Memo in Support"), PP. 9-13). Specifically, Defendant maintains Plaintiff's December 18, 2000 release contained all the elements of a valid and enforceable contract, sufficient to bar Plaintiff's claims against Defendant in the instant case. (Defendant's Memo in Support, P. 10).
The Eighth Circuit has held that an employee subject to a collective bargaining agreement may waive his right to pursue statutory and constitutional claims, by entering into a voluntary settlement. Wallin v. Minnesota Dept. of Corrections, 153 F.3d 681, 689-90 (8th Cir.1998); see also Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 and n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ("[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement.....In determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing"). The Court need not decide whether Plaintiff's handwritten, extremely non-specific release operated to waive his statutory claims here, however, in light of its ruling in Section II, infra, that Plaintiff is entitled to rescind the December 18, 2000 Agreement.

II. Is Plaintiff Entitled To Summary Judgment On His Claim Of Equitable Rescission?

In Count V of his First Amended Complaint, Plaintiff alleges he is entitled to equitable rescission of the December 18, 2000 Agreement. Count V states in its entirety as follows:
31. Plaintiff entered into a written agreement with Defendant on December 18, 2000 whereby he promised not to hold it liable if it paid him $5,000 as severance pay before January 7, 2001 and paid his union health and welfare premiums through July 2001.
32. Defendant did not pay Plaintiff the $5,000 it owed him before January 7, 2001 as it promised it would.
33. As a result, Plaintiff advised Defendant in writing on February 28, 2001 that any proposals to compromise his claims against it, including claims under the Americans with Disabilities Act and the Missouri Human Rights Act, were revoked.
34. On March 30, 2001 Defendant belatedly sent a check to Plaintiff for $5,000 which he returned to it on April 4, 2001.
35. Plaintiff will reimburse Defendant for the health and welfare premiums it paid on his behalf pursuant to the December 18, 2000 agreement by way of a set off or credit against any monies he obtains from it in this litigation or, if no such monies are obtained, will directly *1031 reimburse Defendant for the premiums.
36. Defendant's promise to pay Plaintiff $5,000 as severance pay before January 7, 2001 was a material term in the agreement between the parties.
37. Defendant's conduct in failing to make timely payment of the $5,000 to Plaintiff before January 7, 2001 constituted a breach of a material term in the December 18, 2000 agreement, thereby entitling Plaintiff to rescind and cancel it.
38. Defendant's payment to Plaintiff of $5,000 as severance pay before January 7, 2001 was a condition precedent to his obligation to refrain from holding Defendant liable for violations of the Americans with Disabilities Act and the Missouri Human Rights Act.
39. Defendant's conduct in failing to make timely payment of the $5,000 to Plaintiff before January 7, 2001 constituted a breach of a condition precedent in the December 18, 2000 agreement, thereby entitling Plaintiff to rescind and cancel it.
WHEREFORE, Plaintiff prays for an order of equitable rescission and other relief the Court deems appropriate.
(First Amended Compl., ¶¶ 31-39).
In his Cross-Motion for Partial Summary Judgment, Plaintiff asserts he is entitled to rescind the December 18, 2000 Agreement, as Defendant failed to perform a condition precedent in the contract. (Plaintiff's Combined Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of his Cross-Motion for Partial Summary Judgment, PP. 14-15). In Missouri, courts have held that "[a] party to a contract may, in certain instances, elect to rescind upon a breach by the other party." Harris v. Desisto, 932 S.W.2d 435, 444 (Mo.App.1996) (internal quotations and citations omitted). "If the breach is material or if the breaching party's performance is a condition to the aggrieved party's performance, the aggrieved party may cancel the contract." Curt Ogden Equipment Co. v. Murphy Leasing Co., Inc., 895 S.W.2d 604, 609 (Mo.App.1995) (citation omitted).
Upon consideration, the Court holds Plaintiff is entitled to equitable rescission of his December 18, 2000 Agreement with Defendant. Specifically, the Court finds that Defendant's promise to pay Plaintiff $5,000.00 in severance pay before January 7, 2001, was a condition precedent to Plaintiff's obligation to refrain from holding Defendant liable for further financial obligations. Thus, because Defendant failed to perform its obligation under the Agreement, Plaintiff is entitled to cancel the contract. See Jenkins v. KLT, Inc., 308 F.3d 850, 855 (8th Cir.2002) (citation omitted) ("In order to enforce a promise based upon a condition, the contingency upon which the promise depends must have occurred").[4] Plaintiff's Cross-Motion for Partial Summary Judgment *1032 on Count V of his First Amended Complaint will therefore be granted.

III. Does The Grievance Clause Contained In The Operative Collective Bargaining Agreement Require Deferral Of The Instant Matter Pending Arbitration?

In its final argument, Defendant asserts that should the Court find Plaintiff's statutory claims survive the December 18, 2000 settlement, this Court must nevertheless dismiss the claims, as the CBA at issue requires their submission to arbitration. (Defendant's Memo in Support, PP. 15-17). Upon consideration, the Court will reject this argument. In Neppl v. Signature Flight Support Corp., the Minnesota District Court performed an in-depth analysis of the state of the law with respect to, "whether or not an employee subject to a collective bargaining agreement with a general arbitration clause has waived the right to bring statutory claims....against his employer in federal court." Neppl v. Signature Flight Support Corp., 234 F.Supp.2d 1016, 1019 (D.Minn.2002) (footnote omitted). The Minnesota Court stated as follows:
[B]eginning with Gardner-Denver, the [United States Supreme] Court determined that submission of an employment discrimination claim to binding arbitration pursuant to a CBA did not preclude subsequent litigation of the same claim in federal court....
In Varner v. National Super Markets, Inc., 94 F.3d 1209 (8th Cir.1996), the Eighth Circuit Court of Appeals followed the Gardner-Denver line of cases and found within the federal courts' plenary powers under Title VII a concurrent and absolute right to bring Title VII claims in the federal forum....The Court also noted that Title VII has no requirement that parties exhaust grievance and arbitral remedies before bringing federal claims.
Neppl, 234 F.Supp.2d at 1021-22 (internal citations omitted). The Neppl court continued to conclude that despite the Supreme Court rulings in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and Wright v. Universal Maritime Service Corp., 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), Gardner-Denver and Varner remained binding precedent. Neppl, 234 F.Supp.2d at 1022-24. Upon consideration, this Court approves the reasoning in Neppl, and holds it is not required to compel arbitration of Plaintiff's statutory claims. See Neppl, 234 F.Supp.2d at 1025. Defendant's Motion for Summary Judgment on this point is denied.

CONCLUSION
Accordingly,
IT IS HEREBY ORDERED that Defendant Nu-Way Service, Inc.'s Motion for Summary Judgment (Doc. No. 25) is DENIED.
IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. No. 28) is GRANTED.
NOTES
[1] Plaintiff conversely maintains there were appropriate positions available within Defendant's organization. (Plaintiff's Response to Defendant's Statement of Facts, ¶ 21).
[2] Plaintiff maintains he stressed the importance of prompt payment of his severance pay during the December 18, 2000 meeting. (Plaintiff's Statement of Uncontroverted Facts, ¶ 14).
[3] Defendant maintains that in early January, 2001, Don Costello, Sr. contacted Miller, to inform him Defendant was cash-strapped and unable to make its cash payment to Plaintiff within the time frame set forth in the settlement agreement. (Defendant's Facts, ¶¶ 39, 40, citing Miller Aff., ¶ 19). According to Defendant, Miller verbally agreed to extend the deadline for payment until April 15, 2001. (Id., ¶ 41, citing Miller Aff., ¶ 20).
[4] In its Motion for Summary Judgment, Defendant asserts it is entitled to summary judgment on Plaintiff's claim for equitable rescission, as Defendant fully performed its obligations under the December 18, 2000 Agreement. (Defendant's Memo in Support, PP. 13-14). Specifically, while Defendant acknowledges it failed to pay Plaintiff's severance pay by January 7, 2001, the date in the original Agreement, Defendant maintains it entered into an oral modification of the Agreement with Miller in January, 2001, in which Miller agreed to extend the deadline for payment of the severance pay until April 15, 2001. (Defendant's Facts, ¶¶ 40-41). Upon consideration, the Court holds it need not decide whether the disputed modification transpired, as Miller, a mere witness to the December 18, 2000 Agreement, was unable to alter the nature of the obligations agreed to by Plaintiff and Defendant.